UNITED STATES, Appellee

v.

WILLIAM M. TURNER, JR., Private, U. S. Army, Appellant,

5 USCMA 445, 18 CMR 69

LT COL George M. Thorpe, U. S. Army, and 1ST LT Jackson L. Kiser, U. S. Army, for Appellant.

LT COL Thomas J. Newton, U. S. Army, 1ST LT Ezra B. Jones, Jr., U. S. Army, and 1ST LT A. Kenneth Pye, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Private Turner, the accused in this case, was tried and found guilty by a general court-martial under a charge alleging unpremeditated murder, in violation of the Uniform Code of Military Justice, Article 118, 50 USC § 712. The findings and the sentence to dishonorable discharge, total forfeitures, and confinement at hard labor for thirty years were approved by the convening authority, and subsequently affirmed by a board of review in the office of The Judge Advocate General, United States Army. Thereafter we granted review limited to the issue of whether the testimony by prosecution witnesses as to their personal opinions of the veracity of the accused—as contrasted with his reputation—was admissible.

## II

The evidence adduced at the trial left no doubt that, while stationed with an ordnance company in Korea, the accused had slain one Private Landrum, a fellow member of his unit. However, in his sworn testimony the former sought to excuse or justify this homicide. According to his account of relevant events, he was awakened at approximately 2:00 a.m. on February 28, 1954, to discover Landrum lying atop him and engaged in the attempted perpetration of an act of sodomy. Turner resisted this aggression and, after a brief struggle, Landrum departed from the accused's tent. The latter subsequently armed himself with a carbine and proceeded to Landrum's quarters some hundred yards away.

Turner explained that his purpose was to apprehend his erstwhile assailant, and to surrender him to proper military authorities—but that, as he entered the tent, Landrum approached him menacingly carrying a poker. Thereupon—to frighten and so halt Landrum—Turner fired "up towards the ceiling." Despite a claimed intention not to inflict injury, the bullet tore through Landrum's heart and killed him instantly. The accused told the court that he had not known at the time whether he had struck his victim, but that he had gone from the tent at once —thus abandoning his assigned effort to apprehend Landrum.

In addition to various inconsistent statements on the part of the accused, on which the Government relied to impeach his credibility, its lawyers called as witnesses a corporal Colbert, and one Sergeant Mack—both of whom were members of the accused's company, and had known him for some eight months. Each stated that he had enjoyed ample opportunity to form an opinion of the accused's character as regards truthfulness, and that it was his opinion that the word of Private Turner was not to be accepted or relied on. Further, each stated that he would not believe Turner under oath. Defense counsel inquired of Colbert and Mack why they were not inclined to believe the accused, whereupon they recounted specific incidents which they thought to demonstrate the assigned want of veracity.

446

## III

Appellate defense counsel have urged that in a court-martial—as in most civilian courts—a witness **Headnote 1** may only be permitted to testify to another's reputation, and not to the witness' own opinion of that other's character. Our rejection of that suggestion here is implicit in the following passage from United States v. Haimson, 5 USCMA 208, 17 CMR 208, decided by us some weeks after the grant of review in the present case:

"The current Manual for Courts-Martial permits proof of character not only by means of reputation evidence, but also through reliance on the opinions of witnesses first shown to have enjoyed a sufficiently close acquaintance or relationship with the person in question to justify the formation of a reliable judgment. Manual, supra, paragraph 138f(1). This provision represents a clear departure from the antecedent military rule—as well as the prevailing civilian principle—under which character may only be established by evidence of reputation in the community. See Manual for Courts-Martial, U. S. Army, 1949, paragraphs 125b, 139b; Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 213; United States v. Michelson, 335 US 469, 93 L ed 168, 69 S Ct 213; Wigmore, Evidence, 3d ed, §§ 1608–1622, 1980–6."

As recognized in Haimson, the conclusion that opinion, as well as reputation, character testimony is admissible is compelled by the words of the current Manual for Courts-Martial:

". . . Whenever the character of a person is admissible in a case, the opinion of a witness as to that person's character may be received in evidence if it is first shown that the witness has such acquaintance or relationship with the person in question as to qualify him to form a reliable opinion in this respect. *Another* mode of proving character is by adducing evidence of reputation for the kind of character involved." [Manual for Courts-Martial, United States, 1951, paragraph 138f(1). Emphasis supplied.]

". . . For the purpose of impeachment it may be shown that a witness has a bad character as to truth and veracity. . . . A witness who gives competent testimony concerning the *character (or reputation)* of the person in question as to truth and veracity may be asked whether he would believe the person on oath. See 138f(1) as to ways of proving character." [Manual, supra, paragraph 153b(2)(a). Emphasis supplied.]

The intent of the present Manual's draftsmen is made even clearer by a comparison of the foregoing language with the phrasing of the now-deleted statement from the 1949 Manual for Courts-Martial that "Personal opinion as to character is not admissible." Paragraph 139b, page 186. The aim of the 1951 change was, we are sure, to adopt for the military establishment Dean Wigmore's position to the effect that it is absurd to receive in evidence the composite hearsay—that product of "multiplied guesses and gossip"—which we designate reputation, while simultaneously excluding the opinions of another's character entertained by persons who would be in such a position as to know that character, and whose evaluations may readily be subjected to cross-examination. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 213; Wigmore, Evidence, 3d ed, § 1986. Cf. Ladd, Techniques and Theory of Character Testimony, 24 Iowa LR 498, 511 (1939); Ladd, Credibility Tests—Current Trends, 89 U Pa LR 166, 173 (1940).

Indeed, Wigmore has concluded that the early common law rule clearly permitted a witness to voice his own opinion of another's character. Wigmore, supra, §§ 1980–86. Moreover, as a practical matter, it is extremely difficult for either a witness, or the trier of fact, to maintain a rigid distinction between opinion, on the one hand, and reputation, on the other. Especially is this true with respect to the utilization of the generally-permitted question ad-

dressed to a "reputation-character" witness, "would *you* believe X [the challenged witness] on oath?" It is indeed probable that but few witnesses, when asked this question, frame their answers solely in terms of the general reputation of the subject of impeachment—as divorced, that is, from the witness' own opinion of the former's veracity. Equally dubious is it that a juror or court member would fail to infer that the testimony with respect to veracity did to an appreciable extent mirror the witness' own experience with the person in question. Cf. Wigmore, supra, § 1985.

## IV

In Haimson we made clear that, as a general proposition, specific incidents may not be recounted to ■■■■■■ ■ corroborate a witness' opinion concerning another's character—whether good or bad. Of course, this principle affords no shelter to the present accused—for the reason that the questions of his own counsel led directly to the recitation by the witnesses of the matters on which they based their low opinion of the accused's truthfulness. It is manifest that this line of interrogation was undertaken by the defense lawyers deliberately, and with an eye to convincing the court's members that the episodes on which Colbert and Mack based their testimony were trifling in nature. If it

failed of this purpose, the failure must be deemed to have fallen fairly within the area of trial risks assumed by the accused.

Within this context we should also report our doubt that defense counsel at the trial preserved for our review any sort of issue of admissibility of the questioned testimony concerning the accused's veracity. They did not object to this evidence when offered, nor did they move later that it be stricken. Of course, there is no necessity that we rule finally on the question of whether, under such circumstances, all right to object was waived—since we conclude that the evidence would have been admissible, although objection had been interposed. However, prior decisions of this Court would certainly suggest that failure to object at the trial to inadmissible evidence concerning character precludes consideration of the point of appeal. United States v. Vanderpool, 4 USCMA 561, 16 CMR 135; United States v. Fisher, 4 USCMA 152, 15 CMR 152; United States v. Henry, 4 USCMA 158, 15 CMR 158; United States v. Masusock, 1 USCMA 32, 1 CMR 32.

## V

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.