UNITED STATES, Appellee

v

RUDOLPH A. JOHNSON, Specialist Third Class,
U. S. Army, Appellant

11 USCMA 384, 29 CMR 200

No. 10,231

Decided April 15, 1960

First Lieutenant Robert D. Stiles argued the cause for Appellant, Accused. With him on the brief was Lieutenant Colonel W. H. Blackmarr.

First Lieutenant George J. Miller argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel James G. McConaughy.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At a rehearing[1] the accused, who was the mail clerk of his company, was convicted of three offenses affecting the mails, and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority and board of review affirmed the findings of guilty and the sentence. The accused brought the case to this Court contending that the law officer improperly limited his right to object to former testimony presented by, and admitted in behalf of, the Government.

During the course of the trial, the prosecuting attorney requested an out-of-court hearing. The request was granted. At the hearing, trial counsel disclosed that the purpose for which he had sought the hearing was to establish the predicate for the admission of

[1] United States v Johnson, 9 USCMA 591, 26 CMR 371.

384

the testimony of a number of witnesses at the former trial, on the ground that the witnesses had been either separated from the service, or transferred from the post, and they all were more than 100 miles from the place of trial.[2] Defense counsel objected to the inadequacy of the evidence of absence from the area, but the objection was overruled. Thereupon, defense counsel inquired as to the method by which trial counsel proposed "to handle the matter of questions by the court," since he desired that the present court-martial not be informed that the case before it was a rehearing. Trial counsel outlined his proposed procedure, noting that he was going to treat questions by the court members as part of "direct examination" and that he would omit all questions where there had been an objection which was sustained by the law officer. Trial counsel was asked if he was going to handle the testimony "as a deposition." He indicated he would not describe the testimony in "any way whatsoever," and he pointed out that he would read the testimony from the original record of trial from which he had removed the telltale "blue cover" so that the "court members would not believe that it was a record of trial." Some further discussion was had on the form of presenting questions by the court members at the former trial. Then the discussion turned from the method of procedure to a consideration of the content of the testimony. The nature of this discussion is best set out by excerpts from the verbatim record of the out-of-court hearing.

"DEFENSE COUNSEL: Well, I have objected to it, but am I permitted now as this testimony is read to interpose objections as the testimony is read which were not interposed before?

"LAW OFFICER: You may interpose objections, but I sincerely doubt if I will honor them unless they were objected to at trial before.

"DEFENSE COUNSEL: This is an examination of the witness. I might as well leave the courtroom, if this is the case.

[2] Manual for Courts-Martial, United States, 1951, paragraph 145b, page 271.

"LAW OFFICER: Well, you were preceded by qualified counsel, and I am sure that the cases will bear me out. This is the law of the case, and we will let it go.

. . . . .

"LAW OFFICER: Well, this will be my ruling on the subject. Of course, I appreciate your views. The testimony will be received as the testimony of John Doe, direct examination, cross examination. Testimony as given in answer to questions by the court will be direct examination for convenience only.

"And if there was no objection at the original trial, no objection will be entertained here. If the objection was made and sustained, the question will not be propounded before this court, or repeated before this court.

"TRIAL COUNSEL: Yes, sir.

"DEFENSE COUNSEL: Well, then, I would like to do this for the sake of expedience too. If an objection was interposed and overruled, as long as it will not be further ruled on, let's save time by omitting that as well.

"TRIAL COUNSEL: Perfectly agreeable with me.

"LAW OFFICER: It will be that.

"TRIAL COUNSEL: Anything that can be done to avoid any semblance of the court at this rehearing I will certainly be agreeable to cooperate with.

"LAW OFFICER: If there is an objection made and overruled, don't read the ruling of the law officer again, for the sake of convenience, and to maintain that aura of de novo you may have here."

When court reopened, trial counsel began to read the testimony of Captain R. A. McMahon, the accused's former commanding officer. Defense counsel objected to "this cumulative evidence" contending that it was "the fourth time" the prosecution was going "over the same material." The objection was overruled. Trial counsel then read the testimony of Captain McMahon. Also read to the court-martial from the record of the previous trial, without specific objection by defense counsel, was the testimony of seven other witnesses.

Later, in rebuttal, other testimony by Captain McMahon at the previous trial was read over objection by defense counsel who said that he "extend[ed] . . . to this portion of the testimony" his previous objection. In overruling the objection, the law officer noted that he was entering "the same ruling as , . . [he] entered before."

Before this Court the accused contends that the law officer improperly limited his right to object to the content of the former testimony. The basis of his contention is that testimony given at a former trial is "open to objection . . . [as] incompetent, immaterial, or irrelevant, or that the witness was incompetent," and an objection on those grounds can be interposed without regard to whether a like objection was made at the previous trial. The Government agrees with the accused's statement of the right to object to previous testimony as an "abstract proposition of law." See Annotation, 159 ALR 119; Manual for Courts-Martial, United States, 1951, paragraph 145a and b. It contends, however, that affirmance of the conviction is required for either of two reasons. Primarily, it maintains that no incompetent, immaterial, or irrelevant testimony sufficient to prejudice the accused was admitted into evidence as a result of the law officer's action. Secondly, it alleges that the record of the out-of-court hearing reflects merely a discussion of a hypothetical nature, in connection with possible defense objections to particular questions and answers in the former testimony; and, therefore, the defense counsel was bound to interpose specific objections in the in-court proceedings. See United States v Harris, 10 USCMA 69, 27 CMR 143.

Passing over the second of the Government's contentions, we may assume, for the purposes of this case, that during the out-of-court hearing, the law officer made a definite ruling, and that he was wrong in his ruling. That assumption leads us to a consideration of whether the accused was prejudiced. Error in the admission of evidence is not reversible unless the improperly admitted evidence presents a fair risk of

**386**

prejudice to the accused. United States v Turner, 5 USCMA 445, 18 CMR 69; United States v Stewart, 1 USCMA 648, 5 CMR 76. For the purposes of this case, we may further assume that defense counsel would have interposed an appropriate objection to every improper witness and to every improper question and answer contained in the former testimony. Nothing, however, appears in the testimony that was read in the rehearing, which, if improper, can fairly be regarded as harmful to the accused.

There is no question about the competency of the witnesses to testify for the Government against the accused. All were members of the accused's organization and, on the face of the record, all were qualified to testify. The substance of the testimony of each witness was directly pertinent to the issue.

Captain McMahon testified that the accused was the mail clerk of the unit which trained recruits. On assuming command in May 1956, he discussed with the accused the duties and responsibilities of the mail clerk. One of the accused's specific instructions was to return to the mail room all mail that was not delivered at the regular mail call. Not long after this discussion, Captain McMahon received complaints about the nonreceipt of letters containing money. He discussed the complaints with the Criminal Investigations Division, who, in turn, called in the regular postal authorities. In due course, it was decided to send four test letters to Westerfield, one of the recruits who expressly agreed to participate in the plan. As part of the plan, Westerfield told the accused he was expecting a letter containing money from a "buddy." The test letters were directed to the unit mail room on September 4, 1956. At mail call, only two of the four letters were delivered to Westerfield. He reported to the enforcement agents. Captain McMahon proceeded to the mail room and searched for the other test letters; they were not found. Accordingly, he and the agents followed the accused to the nearby village of Brown's Mills. As the accused came out of a grocery store he was stopped and searched. The agents,

who appeared in person at the rehearing, testified that a magazine was found in the accused's car, and between its pages were a number of letters bearing August postmarks. Another letter was found in the trunk of the car bearing a June postmark; and one was found in the shirt pocket of the accused. By way of former testimony, it was shown that each addressee of the letters found on the accused, or in his car, received the letter from Captain McMahon; that he had not previously received the letter; that he had not authorized the accused to retain the letter for him; and, finally, with one exception, it was probable that between the date of the postmark on the letter and September 4, 1956, the addressee had attended a regular mail call, but that the letter had not been delivered to him by the accused.

Out of all the former testimony, only one matter has been singled out by appellate defense counsel as being objectionable. It concerns the rebuttal testimony by Captain McMahon. At the rehearing, the accused testified in regard to two of the three charges against him. In part, he said that the letters found in the magazine in his car were left over from mail call on September 1, 1956, because the addressees were not present; he inadvertently neglected to return them to the mail room because he went to regimental headquarters "to pick up either telegrams or distribution." When he completed that assignment, he went to the cleaning store on the post, and then proceeded to his home. On returning to his station after the Labor Day weekend, he "actually didn't remember the mail being in the car." The former testimony by Captain McMahon, which was submitted in rebuttal, is to the effect that the accused's "record" for truth and veracity was "completely untrustworthy" and that the witness would not believe the accused under oath. The part of the Captain's testimony which is challenged by appellate defense counsel is underscored in the excerpt of the testimony set out below:

"Question: In other words, if you believe the evidence is against the accused, you are convinced that he is lying; not referring to this, but in general?

"Answer: If the evidence against the accused is overwhelmingly accurate, I do, yes.

"Question: In other words, you have set yourself as a god to judge your fellow men at all times?

"Answer: No; not at all. My opinion was based upon unimpeachable information from other sources, and not any information that I based upon myself and myself alone. I saw the man's service records, letters from the Department of Army, things of that nature, that I considered accurate. And when he disagrees with them, I have no other choice but to believe that the Department of the Army and his service record are correct. Particularly when he can't bring any other evidence in to contradict service record or Department of Army, in spite of the fact that ample time was given to do so.

"Question: You mean then that you base this last statement on the fact that his records do not agree with his version of something?

"Answer: *Yes; plus the fact that I received letters from concerns and corporations, reliable people like the Tidewater Oil Company. They state that Johnson owed them $336 and has owed it for months. I prefer to believe them rather than Johnson. I feel that those people are accurate, and further, I do believe them.*

"Question: Has Johnson ever done anything worthwhile?

"Answer: On one occasion.

"Question: On that occasion did you endorse a letter of commendation to him 'with pleasure'?

"Answer: I not only endorsed the letter; I wrote the letter, that the regimental commander signed. I felt that he deserved it. I wrote the letter, and the regimental commander signed it, and it was at my recommendation that Johnson received the letter. I just added my endorsement as a matter of form.

"Question: Would it be fair to say, Captain, that your judgment as to Johnson's credibility is based not

only on your opinion of him, but on the fact that other people disagree with him?

"Answer: No; I don't think so, because this has been a continuing thing. I have had ample opportunity *to judge the man's reputation for truthfulness myself, in addition to the supporting things from other people. I really feel in my own opinion, as well as the opinion of others, that he is completely unreliable and untruthful.*" [Emphasis supplied.]

Appellate defense counsel contend that the italicized part of the testimony is objectionable because the witness could not support his opinion "by referring to a specific previous instance of the accused's prevarication." In accordance with the endeavor to keep from the court members that there had been a previous trial, Captain McMahon's testimony was presented without separating the direct testimony from the cross-examination. The alleged objectionable matter is part of the cross-examination. Relying upon United States v Turner, supra, appellate defense counsel say this circumstance is immaterial because the witness' answer was subject to a motion to strike, which defense counsel at the trial was prevented from interposing, because of the ruling by the law officer. The *Turner* case however does not go as far as appellate defense counsel suggest. We there said:

"In Haimson we made clear that, as a general proposition, specific incidents may not be recounted to corroborate a witness' opinion concerning another's character—whether good or bad. Of course, this principle affords no shelter to the present accused—for the reason that the questions of his own counsel led directly to the recitation by the witness of the matters on which they based their low opinion of the accused's truthfulness. It is manifest that this line of interrogation was undertaken by the defense lawyers deliberately, and with an eye to convincing the court's members that the episodes on which Colbert and Mack based their testimony were trifling in nature. If it failed of this purpose, the failure must be deemed to have fallen fairly within the area of trial risks assumed by the accused."

Be that as it may, in the context of the whole of Captain McMahon's testimony, the Tidewater reference ■ presents no fair risk of prejudice to the accused. At best, it indicates only a dispute between the accused and Tidewater Oil, without showing that the accused was lying or dishonest in the transaction. Consequently, even if a motion to strike the reference was justifiable but precluded by the law officer's ruling, the absence of any risk of prejudice provides no basis for reversal of the accused's conviction. See United States v Young, 2 USCMA 470, 9 CMR 100.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.