UNITED STATES, Appellee

v

CHARLES E. GRIGGS, Specialist Four,
U. S. Army, Appellant

13 USCMA 57, 32 CMR 57

No. 15,606

April 20, 1962

*First Lieutenant David M. Gill* argued the cause for Appellant, Accused. With him on the brief were *Captain Vernon C. Maulson* and *Captain Ralph T. Smith*.

*First Lieutenant Carl F. Wrench* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper*.

## Opinion of the Court

QUINN, Chief Judge:

An Army general court-martial in France convicted the accused of the wrongful possession of marihuana in the City of Bordeaux, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He contends the conviction should be reversed because certain testimony was improperly admitted into evidence.

The first assignment of error deals with testimony of a criminal investigator to the effect that the Moulin Rouge, a bar frequented by the accused, and in front of which he first came to the attention of the military police, had a "reputation . . . of people hanging around . . . who offer marihuana for sale." No objection was made by the defense. Instead, on cross-examination defense counsel elicited from the witness an admission that the bar was "quite a hangout for soldiers" and that many of them did not go there to purchase marihuana. The witness also admitted that sales of marihuana were not limited to the confines of the Moulin Rouge, but were made "anywhere" on the streets in an apparently large area.

Ordinarily, the failure to object at trial to the admission of evidence will preclude appellate review of a claim that the evidence is inadmissible. United States v Pruitt, 12 USCMA 322, 30 CMR 322; United States v Clark, 4 USCMA 650, 16 CMR 224; cf. United States v Patrick, 8 USCMA 212, 24 CMR 22. Apart from waiver, however, the challenged evidence has sufficient probative value to justify its admission. In a prosecution of this kind, one of the fundamental issues is whether the accused knew he was carrying the forbidden article. In United States v Hughes, 5 USCMA 374, 17 CMR 374, the accused attempted to account for a packet of marihuana found in the breast pocket of his jacket by evidence that a fellow soldier, who had borrowed the suit from him, had been seen wearing it in an area known as a source of marihuana. Although we did not rule directly on the admissibility of the evidence, we commented on its probative value in connection with the accused's awareness of the physical presence of the prohibited article on his person. In a reverse situation in United States v Navarre, 5 USCMA 32, 34,

17 CMR 32, the Government introduced evidence of the reputation of the place in which the accused was seen shortly before his apprehension. Referring to the sufficiency of the evidence to prove accused's guilt, we said that one of the matters that could be considered on the question of the accused's awareness of the presence on his person of the prohibited drug was the fact that he was "found in an establishment known to traffic in drugs." The reputation of the person with whom the accused deals, or of the place in which he is found, is frequently advanced as one of the circumstances showing the existence of probable cause to obtain a search warrant or to effect an arrest. See United States v Ness, 13 USCMA 18, 32 CMR 18. Here, evidence that the Moulin Rouge was a general "hangout" for soldiers, and that the accused was not seen to leave his table during the time he was in the bar, tended to lessen the weight of the adverse reputation evidence, but it did not, as appellate defense counsel contend, reduce it to such insignificance as to make it inadmissible as a matter of law.

A law officer has some discretion in excluding evidence of limited probative value. United States v  Thomas, 6 USCMA 92, 19 CMR 218; United States v Stewart, 1 USCMA 648, 650, 5 CMR 76. Unquestionably, even in the absence of objection, he should rule out evidence, the admission of which would jeopardize fundamental rights of the accused. United States v Dupree, 1 USCMA 665, 5 CMR 93. That, however, is not the situation here. The value of the evidence was not great, but the evidence was admissible. Had defense counsel objected, the law officer might have instructed the court-martial to disregard the evidence on the ground that, under the circumstances, it had too tenuous a connection with the issue of accused's conscious knowledge of the presence of the marihuana. However, we cannot say that he abused his discretion by failing on his own initiative to rule against the Government.

The second claim of error concerns testimony of three of the accused's military superiors of their respective opinions as to accused's truth and veracity. The accused testified he did not know of the presence of the marihuana packet which was found in his trouser pocket. He said he never used marihuana; and he did not know how the packet got into his pocket. He intimated that the packet might have been left by one of two persons to whom he had loaned his uniform on several earlier occasions, the last of which was about three weeks before his apprehension. Both borrowers had returned to the United States before the accused's arrest; they were "buddies" but not "exactly good friends" of the accused. The company commander testified that neither of these persons was a "good" soldier. To impeach the accused's denial of knowledge, the prosecution called the accused's commanding officer, Captain Rockwell; the accused's acting first sergeant, Master Sergeant Bartley; and the chief of the Criminal Investigations Detachment to testify as to the accused's truthfulness.

As in the case of any witness who testifies, an accused is subject to attack upon the ground of lack of veracity. Evidence of accused's bad general reputation for truth and veracity in the community in which he works and lives is proper. It is also permitted by way of opinion testimony of a witness who is "first shown to have enjoyed a sufficiently close acquaintance or relationship with the person in question to justify the formation of a reliable judgment." United States v Haimson, 5 USCMA 208, 222, 17 CMR 208; Manual for Courts Martial, United States, 1951, paragraph 138f, page 243. Here, a sufficient predicate of acquaintanceship was established for each witness to justify a statement of his opinion of the accused.

Aside from the attack on the admissibility of the opinion testimony as such, appellate defense counsel challenge the evidence on the ground it includes inadmissible details of specific incidents of lack of truthfulness on the accused's part. Generally, the details were elicited by defense counsel.

**59**

One witness did refer to specific incidents underlying his opinion but was cautioned by trial counsel "not [to] go into the details"; there was no objection or comment by defense counsel. Consequently, the general rule excluding specific incidents can hardly be urged here as ground for reversal. Speaking of a substantially similar situation in an earlier case, we said:

"In *Haimson* we made clear that, as a general proposition, specific incidents may not be recounted to corroborate a witness' opinion concerning another's character—whether good or bad. Of course, this principle affords no shelter to the present accused—for the reason that the questions of his own counsel led directly to the recitation by the witnesses of the matters on which they based their low opinion of the accused's truthfulness. It is manifest that this line of interrogation was undertaken by the defense lawyers deliberately, and with an eye to convincing the court's members that the episodes on which Colbert and Mack based their testimony were trifling in nature. If it failed of this purpose, the failure must be deemed to have fallen fairly within the area of trial risks assumed by the accused." [United States v Turner, 5 USCMA 445, 448, 18 CMR 69.]

From what we have said, it is apparent there is no error in the law officer's ruling admitting the opinion testimony. Accordingly, the decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.