**UNITED STATES, Appellee,**

v.

**Marcus D. FIELDS, Private, U. S. Army, Appellant.**

No. 31,666.

CM 433132.

U. S. Court of Military Appeals.

March 28, 1977.

*Captain Lawrence E. Wzorek* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey* and *Major Richard J. Goddard.*

*Captain Michael J. Hurley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner, Captain William C. Kirk,* and *Captain James R. Anthony.*

Opinion of the Court

COOK, Judge:

Appellant was convicted by a general court-martial of extortion and assault consummated by a battery in violation of Articles 127 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 927 and 928, respectively. We granted review to determine whether the military judge improperly re-

stricted defense counsel's examination of a defense witness.

The Government's primary witness was the victim, Private Kapsalis, who testified the appellant struck him and, shortly thereafter, uttered a threat, in an attempt to obtain money from him. On cross-examination, Private Kapsalis acknowledged he had worked as an informant for the CID, had been a member of a drug rehabilitation program, and had previously sold and purchased drugs. Additionally, he responded in the affirmative when asked if the CID had requested his assistance in an attempt to "get" the appellant.

In a further effort to impeach Private Kapsalis, the defense called one witness prior to findings. Specifically, this witness noted he had a bachelor's and master's degree in psychology, with a specialized degree in counseling.[1] He further related he was employed by the Department of the Army in the Alcohol and Drug Control Program. In this capacity he had previously had personal contacts with Private Kapsalis, mostly from group therapy sessions. After obtaining a response from the witness indicating Private Kapsalis lacked credibility, the trial defense counsel attempted to question the witness as to Private Kapsalis' "emotional problem" and its effect on his veracity. The military judge then indicated counsel's questions must be confined to Private Kapsalis' reputation for truth and veracity and whether the witness would believe Private Kapsalis under oath. Subsequently, the witness testified he would not believe Private Kapsalis under oath, but he did not testify as to his emotional problem.

On appeal the appellant submits the witness was a qualified expert who should have been permitted to testify as to any underlying "emotional problem" of the Government's witness and its effect on his truth and veracity. We disagree.

A witness' credibility may be impeached by showing he has a bad reputation for truth and veracity, and a person who testifies as to such character may be asked if he would believe the witness under oath. Paragraphs 138f(1) and 153b(2)(a), Manual for Courts-Martial, United States, 1969 (Rev.). Normally, however, a witness' character for truth and veracity may not be shown by specific incidents.[2] In the present case the defense witness was permitted to testify he would not believe the Government witness under oath, and, thus, there has been compliance with the aforementioned Manual provisions.

In *United States v. Hodges*, 14 U.S.C. M.A. 23, 33 C.M.R. 235 (1963), a Government psychiatrist testified as to the psychiatric classification of a prosecution witness and the capacity of such a person to tell the truth. Because the defense had previously presented similar evidence, the Court did not decide the limits, if any, of expert testimony related to the issue of credibility. There continues to be a split of authority in various jurisdictions as to whether and under what circumstances such evidence is admissible. *See United States v. Silva*, 37 C.M.R. 803 (A.F.B.R.1966); Annot., 20 A.L. R.3d 684 (1968). *See generally* Fed.R.Ev. 701–702. Furthermore, while some courts have precluded psychologists from testifying on the issue of sanity, others have reached an opposite conclusion. *See* Annot., 78 A.L.R.2d 919 (1961).[3] However even where such testimony has not been automatically excluded, the question of admissibility has not been resolved on the witness' title as psychologist. Rather, an inquiry has been made to ascertain the witness' experience and his degree of competency as to the matter in issue, and this determination is within the discretion of the trial judge. *See United States v. Riggle-*

---

1. Although the record reflects this witness stated he was a psychiatrist, this appears to be a typographical error as his qualifications related solely to the field of psychology.

2. *United States v. Turner*, 5 U.S.C.M.A. 445, 18 C.M.R. 69 (1955); *United States v. Haimson*, 5

U.S.C.M.A. 208, 17 C.M.R. 208 (1954). *See United States v. Griggs*, 13 U.S.C.M.A. 57, 32 C.M.R. 57 (1962). *But see* Fed.R.Ev. 608(b).

3. We note the present case does not involve the sanity of the Government witness but merely an "emotional problem."

man, 411 F.2d 1190 (4th Cir. 1969); *Jenkins v. United States*, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962). In *United States v. Hagelberger*, 3 U.S.C.M.A. 259, 12 C.M.R. 15 (1953), the Court held that review of a trial judge's determination as to whether a witness may testify as an expert is limited to whether the ruling constitutes an abuse of discretion.

■ We deem it unnecessary in the present case, as in *United States v. Hodges, supra*, to decide the limits, if any, of expert testimony related to the issue of credibility because the record clearly supports the trial judge's exclusion of the testimony. As previously noted the defense witness testified he had a master's degree in psychology with a specialized degree in counseling. His experience was limited to his employment in a drug rehabilitation program. There is no evidence that he was capable, either by training or experience, of recognizing or diagnosing a specific mental defect, disease, derangement or character trait and its effect on the ability of a person to tell the truth. Appellant's attempt to elicit testimony as to Private Kapsalis' "emotional problem" necessarily required the witness to identify and classify such character trait and its effect on Kapsalis' veracity. Here, there was no demonstration on the record that the witness was qualified to make the requested classification and to further testify as to the characteristics of the perceived character trait. Thus, the defense inquiry was directed toward a mental classification or opinion requiring some degree of expertise which could not have been attained by the mere observation of the behavior of Private Kapsalis. While the Court was divided in *United States v. Wilson*, 1 M.J. 325 (1976), as to the degree of expertise attained by a witness from his observations of the routine employed by a pawn shop in maintaining its records, the present case involved more than an opinion derived from visual observation, but required a further opinion as to a character trait which necessarily included a professional mental classification. Since the required expertise was not demonstrated in the record, the inquiry was improper.

Indeed, the present case is not unlike *United States v. Adkins*, 5 U.S.C.M.A. 492, 18 C.M.R. 116 (1955), where the Court held that testimony as to an intelligence agent's opinion of the veracity of homosexuals was improper. While expressing some reservations as to whether anyone could qualify as an expert in view of the state of the knowledge on the matter, the Court held that the inquiry was directed toward an area requiring expertise and the witness had not been qualified as an expert. *See* paragraph 138*e*, MCM. In the present case, the inquiry was also directed toward an area requiring expertise without qualifying the witness as an expert. Under the circumstances, we conclude that the military judge did not abuse his discretion in rejecting the witness as an expert.

■ Finally, even if there had been an abuse of discretion in the present case, such an error must be tested for prejudice. *United States v. Wright*, 17 U.S.C.M.A. 183, 37 C.M.R. 447 (1967). In view of the damaging evidence elicited from Private Kapsalis on cross-examination as to his involvement in illicit drugs and an attempt to "get" the appellant, the exclusion of testimony from a psychologist relating to Private Kapsalis' "emotional problem" was not prejudicial to appellant where the psychologist was permitted to testify he would not believe Private Kapsalis under oath. The additional evidence as to an "emotional problem" would have been insignificant under such circumstances.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring in the result):

I concur in the majority's conclusion that the appellant was not materially prejudiced by the restrictions placed by the trial judge on the questioning of Mr. Pederson, the psychologist/counselor of Private Kapsalis,

the key Government witness.[1] This witness testified that he had "personal contact" with Private Kapsalis 3 to 4 hours per day during Private Kapsalis' participation in the Alcohol and Drug Control Program.[2] Based upon this contact,[3] Mr. Pederson stated that he felt that Private Kapsalis lacked credibility and that he would not personally believe Private Kapsalis under oath. The defense efforts to probe into possible "emotional problems affecting his [Kapsalis'] veracity" were not permitted by the military judge.

I believe that under the facts of this case this question was proper and should have been permitted by the trial judge. I believe that when a witness gives an opinion as to the credibility of another, great latitude should be allowed by the trial judge to questioning designed to fully show any possible basis or bias affecting that opinion. An opinion standing alone has little significance to the court members. This is particularly prevalent where, as here, the opinion is formulated in the special format of a group counseling session. This format and the relevant underlying matters must be given a proper perspective so that these can be evaluated by the triers of fact.

I cannot agree with the majority's interpretation of the Manual[4] rules concerning the scope of the modes of undermining the credibility of witnesses. The majority has read paragraphs 138$f$(1) and 153$b$(2)(a) of the Manual in a manner which I feel too severely restricts the fact-finding process of the court. The provisions cited do not limited examination to eliciting a response to the simple question to the witness as to whether he would believe another individual under oath. Further, the ultimate propriety of examination beyond this point does not depend upon whether the given witness enjoys the status of expert. The relevant factors for the trial judge to consider are (a) whether the witness is sufficiently acquainted with the individual in question so as to qualify him to form a reliable opinion as to the particular character trait, and (b) whether the matters to be presented will be helpful to the court members in resolving the issue(s). Paragraph 138$f$(1), MCM; Fed.R.Ev. 701.[5] If, as in this case, this criteria is met,[6] then the trial judge should allow the examination.[7] It is

1. Private Kapsalis was the victim of both the extortion and assault consummated by battery. He was the only prosecution witness presented to identify the appellant as a perpetrator. The only other prosecution witness, Private Grimstead, could not identify Private Fields as one of the two assailants, and could only testify that he had overheard part of an argument between Private Kapsalis and two men about some money owed.

2. The actual residential program was 10 days involving various counseling sessions. Mr. Pederson's primary contact with Private Kapsalis was through group therapy sessions, and he worked with Private Kapsalis for 8- of the 10-day total.

3. Mr. Pederson also referred to the preliminary 30-day evaluation process which occurred immediately prior to the actual residential program.

4. Manual for Courts-Martial, United States, 1969 (Rev.).

5. Rule 701 was not changed when Congress codified the former proposed rules of evidence; the underlying premise had the support of respected commentators, and it does not conflict with the pertinent Manual provision. *See* McCormick, Evidence § 11 (2d ed. 1972).

6. It is compliance with this criteria, not whether Mr. Pederson by virtue of his training and education enjoyed the status of expert as to this matter, which must control. *See* paragraph 138e, MCM; Fed.R.Ev. 702. Hence, I feel it unnecessary for the Court to determine whether Mr. Pederson would qualify as such under either the Manual or Federal Rules of Evidence. Mr. Pederson clearly had ample opportunity to observe Private Kapsalis and form an opinion as to his truth and veracity. Certainly if, as suggested by the trial defense counsel, the basis for that opinion was that Private Kapsalis suffered from emotional problems which precluded or made it difficult for him to be truthful, this information could be helpful to the court members in resolving perhaps the most critical issue in this case, Private Kapsalis' veracity.

7. The trial judge may always inquire into the relevancy of such matters either by requiring a proffer from the counsel, or by actual examination of the witness in an Article 39(a), 10 U.S.C. § 839(a) session.

recognized that the decision to admit or exclude such evidence is one within the discretion of the trial judge; however, as always discretion involves the sound exercise of viable considerations,[8] not a rigid adherence to a single sentence in the Manual.[9]

I agree with the majority that this is a matter which must be tested for prejudice.

My examination of the evidence of record leads me to conclude that although the excluded matter may have been probative, it would not have been sufficiently determinative as to Private Kapsalis' veracity to have caused the court members to render a different finding. As I feel that there is no fair risk that the appellant was substantially prejudiced, I concur in the result.

**8.** Examination of the Federal Rules of Evidence and decisions of this Court clearly place appropriate limitations on such examination. Certainly there is a requirement that the matters be probative of truthfulness or its opposite; the probative value of the matters cannot be outweighed by the danger of unfair prejudice, confusion of the issues, or the misleading of the jury, for that defeats the purpose behind the rule permitting such examination. Questions designed to harass or unduly embarrass are impermissible, and the trial judge always must consider the factors of remoteness in time and both the length of and opportunity to observe by the witness. *See generally* Fed.R.Ev. 608(b), 403, and 611; McCormick, *supra* § 184–185.

**9.** The majority correctly recognizes that paragraph 153*b*(2)(a), MCM, specifically states that a witness may be asked whether he would believe another under oath; I do not regard that single sentence as being all conclusive on the scope of examination as to matters affecting truth and veracity. That very section of the Manual refers the reader back to paragraph 138*f*(1), MCM, for the methods of proving character, and for the reasons set forth in the body of this concurrence, I feel that this provision allows the type of questioning sought, subject to the limitations set forth in note 8.