**UNITED STATES, Appellee,**

v.

**Kenneth JENKINS, Staff Sergeant, U.S. Air Force, Appellant.**

No. 58074.

ACM S27275.

U.S. Court of Military Appeals.

Oct. 24, 1988.

For Appellant: *Major Mark R. Bell* (argued); *Colonel Leo L. Sergi* (on brief); *Major Harry L. Heintzelman, IV.*

For Appellee: *Major Kathryn I. Taylor* (argued); *Colonel Joe R. Lamport* and

*Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a special court-martial convened by the Commander, Headquarters, 2853D Air Base Group, Robins Air Force Base, Georgia, on August 26, 1986. Despite his pleas to the contrary, the officer-member court found appellant guilty of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. He was sentenced to a bad-conduct discharge and reduction to the lowest enlisted pay grade. The convening authority approved the sentence as adjudged, and the Court of Military Review affirmed in a memorandum opinion on March 10, 1987.

We granted review to consider:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN REFUSING TO ALLOW THE DEFENSE TO PRESENT THE OPINION TESTIMONY OF LIEUTENANT COLONEL WILLIAMS.[1]

On March 20, 1986, appellant was randomly selected to give a urine sample for testing to determine if he was using illegal or controlled substances. The sample was tested by radioimmunoassay, and the results were "positive for the presence of marijuana" metabolites. Shortly thereafter, when he learned that the commander intended to impose nonjudicial punishment in accordance with Article 15, UCMJ, 10 U.S.C. § 815, appellant demanded that he be tried by court-martial. Art. 15(a).

At trial, the Government submitted evidence of the testing procedures; the expertise and quality control employed in handling urine samples; and a stipulation of fact "agreed to" by "the parties to this trial" "regarding chain of custody of ...

1. Lieutenant Colonel E. Roger Williams, U.S. Air Force, was the Chief of Mental Health, Robins Air Force Base, and possessed a Bachelor of Science and Ph.D. in Clinical Psychology, as well as approved residency through the Air Force in Clinical Psychology.

[appellant's] urine specimen." *See United States v. Ford,* 23 M.J. 331 (CMA 1987); *United States v. Murphy,* 23 M.J. 310 (CMA 1987); *United States v. Harper,* 22 M.J. 157 (CMA 1986).

During direct examination, appellant denied that he had ever used marijuana. It was also established that, although he had been tested approximately three times, positive results were reported only once. Appellant attributed the one positive report to the fact that "every morning for the past three or four years ... [he had] used mega doses of vitamins and herbs and herbal teas" because of his extensive involvement in "physical fitness activities." He also used one "tea type formula" which he "just put in ... tea" because it was "a stamina rehab."

Appellant's contention was convincingly refuted by an expert witness called by the Government, Dr. John Vasiliades, Ph.D., who was the Chief of Quality Assurance for the Air Force Drug Testing Program. Dr. Vasiliades testified that he had "not heard" of "any study which indicated that ... [use of] herbal tea would produce a positive THC test," and he was "not aware of any data or any published reports where someone ha[d] put marijuana in tea and drank it." He continued, stating:

> It's well known and there are studies ... that the marijuana plant itself is not psychoactive. For example, THC which is in the marijuana plant needs to be heat activated before it's converted to THC. In other words, it exists as a precursor, ... so the way to get it into the psychoactive form ... [is] to heat it. Usually heating it about 350 degrees ... Fahrenheit or above 150 centigrade would be needed to get into the active form, THC. Therefore, it could be metabolized and we would detect it in the urine.

When asked if marijuana would "be detectable in the urine" if it did "not reach that temperature," Dr. Vasiliades responded:

> [It] [p]robably [would] not [be detectable] because you would not be metabolizing it and we would not be picking it up as the carboxy metabolite. In other words, you

must get it into THC before it could be metabolized to the compound that we're measuring in the urine by confirmation.

The defense offered no other explanation for the positive urinalysis result. However, counsel called Technical Sergeant William J. Edes and Lieutenant Colonel E. Roger Williams. Sergeant Edes testified that he had known appellant for a year and a half, and that appellant worked for him as a boiler operator. Edes stated on the record that he felt appellant was "an outstanding individual" and "[h]e's never done anything to make me doubt him as far as telling me the truth."

The purpose for calling Lieutenant Colonel Williams was threefold:

(1) To testify regarding appellant's honesty, predicated on marital counseling sessions he provided to Sergeant and Mrs. Jenkins;

(2) To testify regarding appellant's good military character; and

(3) To testify about appellant's character—that it appears to be inconsistent with that of a person who used drugs (according to a score appellant received on a Minnesota Multiphasic Personality Inventory substance-abuse scale which apparently placed appellant "below average").

Trial counsel objected, stating that any opinions Lieutenant Colonel Williams might offer were founded on his minimal contact with Sergeant Jenkins during marriage counseling sessions. It was counsel's opinion that the Colonel's testimony was not relevant to the pertinent character trait of honesty. Moreover, the core of experience upon which the Colonel based his opinion about appellant is found in his responses to questions by the military judge and trial counsel, as follows:

[Questions by the military judge.]

Q. *[Y]our only representation regarding general military character and duty performance comes from a contact in Sergeant Jenkins' unit whose name you do not know?*

A. He was his supervisor at the time I called.

Q. *And those were representations given to you by that supervisor? You have no firsthand knowledge of that information?*

A. *No, sir, I've never seen Sergeant Jenkins perform duty.*

Q. *[T]he opinion that you would give regarding truthfulness and honesty and veracity comes from the marital counseling that you've done? It didn't involve an investigation or an assessment regarding the drug offense at hand, did it?*

A. *No, sir.*

Q. *And those matters are not verified beyond the questioning of the spouse involved in the marital counseling?*

A. *No.*

(Emphasis added.)

[Questions by trial counsel.]

Q. Okay. Now, you said you talked with him [appellant] on four or five sessions that had to do with Sergeant Jenkins, that had to do with his family and his domestic problems, is that right?

A. That's right.

Q. And those sessions would vary from 45 minutes to an hour and a half?

A. Right.

Q. And you weren't talking about drugs in any of those periods?

A. No.

Q. You weren't talking about military character?

A. No.

Q. You weren't talking about performance of duty?

A. No.

Q. You were talking exclusively about the marital situation?

A. Absolutely.

Lieutenant Colonel Williams was going to address the issue of appellant's ability to tell the truth after seeing appellant in *only*

four or five marital counseling sessions and speaking with him a couple of times over the telephone. The witness contended that, in these short sessions/interchanges, he had come to know appellant well enough that he could testify that appellant was trustworthy. Trial counsel moved to bar all of Lieutenant Colonel Williams' testimony as inadmissible and irrelevant.

The military judge "grant[ed] the Government's motion *in limine*" with this explanation:

> I find that there's an insufficient basis to give the opinion solicited in this case for good military character or for truth and veracity by this witness. You may note your exception for the record, but I'll ultimately rely on Rule 403 regarding unfair prejudice, confusion and time, misleading the members, as being the ultimate decider in this situation after weighing all the issues carefully and hearing the evidence that ... [Colonel Williams] would present.

The judge did not indicate which particular bases he considered to have been insufficiently established. E.g., Mil.R.Evid. 401, 602, 702, etc. Certainly, a character witness must have "a sufficiently close acquaintance ... to justify the formation of a reliable judgment."[2] *See United States v. Perner*, 14 M.J. 181, 185 (CMA 1982); *United States v. Griggs*, 13 USCMA 57, 32 CMR 57 (1962); *United States v. Haimson*, 5 USCMA 208, 17 CMR 208 (1954). *See generally United States v. Williams*, 26 M.J. 487 (CMA 1988).

Nevertheless, the military judge performed the balancing test required under Mil.R.Evid. 403, Manual for Courts-Martial, United States, 1984, and "[h]is decision will not be reversed absent a clear abuse of discretion." *United States v. Brooks*, 22 M.J. 441, 444 (CMA 1986); *see United States v. Mukes*, 18 M.J. 358, 359 (CMA 1984). We find no abuse of discretion here.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

2. We will assume, *arguendo*, that appellant's character for truthfulness had been attacked so as to permit the defense to attempt to bolster it. Mil.R.Evid. 608(a)(2).