**UNITED STATES, Appellee**

v.

**Carlos COLEMAN, Staff Sergeant U.S. Air Force, Appellant.**

No. 93–0920.
CMR No. 29450.

U.S. Court of Military Appeals.

Argued April 19, 1994.

Decided Sept. 29, 1994.

Certiorari Denied Jan. 17, 1995.

See 115 S.Ct. 907.

For Appellant: *Captain Eric N. Eklund* (argued); *Colonel Jay L. Cohen* (on brief); *Lieutenant Colonel Frank J. Spinner* and *Captain David D. Jividen.*

For Appellee: *Major Barnard N. Madsen* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

WISS, Judge:

Appellant was tried by a general court-martial composed of officer members at McClellan Air Force Base, California. Contrary to his pleas, he was found guilty of attempted carnal knowledge (2 specifications) [1] and of committing indecent acts upon a child, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 USC

1. Appellant was found not guilty of the allegation in these two specifications that he had commit- ted carnal knowledge alleged under Article 120, Uniform Code of Military Justice, 10 USC § 920.

§§ 880 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $550.00 pay per month for 3 years, and reduction to E–1. The convening authority approved the sentence as adjudged, and the Court of Military Review affirmed in an unpublished opinion.

■ This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED, TO THE PREJUDICE OF APPELLANT, BY IMPROPERLY RE-STRICTING THE DEFENSE CROSS–EXAMINATION OF A GOVERNMENT EXPERT WITNESS.

We hold that the military judge did not abuse his discretion in denying defense counsel the opportunity to cross-examine a prosecution expert witness using hearsay that the defense failed to establish was an authoritative publication.

I

The victim in this case was a 14–year–old female who testified as to appellant's acts of sexual molestation. The credibility of the victim was the linchpin of the prosecution's case. To support the victim's credibility by explaining why a child may delay or not report these matters and "what is going on through the mind of a [sexually abused] child," the prosecution presented an expert witness. The present issue arises from the military judge's restriction of defense counsel's cross-examination of this witness.

The witness in question was Mrs. Julie Holder, a family advocacy therapist at the David Grant Medical Center, Family Advocacy Clinic, Travis Air Force Base, California, who the prosecution offered as an expert on child sex abuse. She opined that it is not unusual for sexually abused children not to report the abuse because the child is often "confus[ed] about how to handle the situation." Her brief substantive testimony on

direct examination, covering only four pages in the record, included an explanation of the five phases of the Child Sexual Abuse Accommodation Syndrome as presented by Dr. Roland Summit in a 1983 published study.[2] As Mrs. Holder stated that she had seen the alleged victim one time for approximately 1 hour and as Mrs. Holder did not proffer an opinion as to whether the victim fit within this syndrome, defense counsel did not object to Mrs. Holder's credentials as an expert or to her testimony.

On cross-examination, however, defense counsel challenged the authority of Dr. Summit's work, which Mrs. Holder had recited. First, counsel established that Mrs. Holder was "familiar with some critics of that particular work...." Second, without objection by trial counsel, defense counsel relied upon an article by Dr. Lee Coleman, published in the January–February 1986 issue of *Forum* magazine, entitled, "False Allegations of Child Sexual Abuse, How The Experts Have Been Caught With Their Pants Down." Mrs. Holder testified that she thought that she had "scanned" this article, and counsel used it as a basis to present detailed questions to Mrs. Holder. Defense counsel elicited Mrs. Holder's agreement with Dr. Coleman that the syndrome actually cannot indicate "whether a child has or has not been the victim of sexual abuse." As counsel continued to make references to Dr. Coleman's article, however, Mrs. Holder declined to respond directly to questions about whether Dr. Summit had used the syndrome actually to indicate whether a child has or has not been the victim of sexual abuse, as she had agreed with Dr. Coleman's view could not be done, and whether Dr. Coleman had indicated that children can be subjected to manipulation by adults other than the alleged sexual offender.

At one point, when defense counsel attempted to ask Mrs. Holder if she agreed with a particular statement of Dr. Coleman,

---

2. Mrs. Holder presented the five phases of Child Sexual Abuse Accommodation Syndrome as: 1) The abuse is a "secret" that the child should not tell to anyone; 2) the child is helpless—not knowing "where to turn or what to do about" the abuse; 3) the child is "entrap[ped]" in "a symbi-otic relationship" with the offender and "accommodate[s] what's happening"; 4) after discovery of the abuse, the child presents a "confusing, conflicting disclosure"; and 5) the child can "actual[ly] retract[]" the allegation.

trial counsel objected to defense counsel's "reading from an article, that's inadmissible hearsay...." Defense counsel replied that, as Mrs. Holder had testified about one theory regarding child sexual abuse, the defense was attempting to test her expertise by reference to "a particular work" that states "converse theories." The military judge sustained the prosecution's objection, stating, "You may question her about alternative theories not by reading from a book or article, counsel."

With this exchange, defense counsel abandoned any attempt to use Dr. Coleman's material and instead set out to question Mrs. Holder about "a developing idea" regarding child sexual abuse put forth by Dr. Thomas Martin, chief of psychiatry for the Wilford Hall Medical Center at Lackland Air Force Base, Texas. However, when Mrs. Holder stated that she did not know of Dr. Martin, the military judge sustained trial counsel's objection to defense questions about "a developing idea." The military judge instructed defense counsel that he was permitted to ask Mrs. Holder "about the proposition" but prohibited defense counsel from "elud[ing][sic] to the authority by someone whom you are manufacturing through a hole cloth [sic] here, and not the testimony of the witness...."

Thus, defense counsel again abandoned any attempt to establish the "proposition" or its authority and moved to an altogether new line of questioning. Defense counsel elicited Mrs. Holder's admission that she had made no diagnosis that the child sexual abuse accommodation syndrome applied to the victim in this case and that she was unable to address whether the victim's allegations were true.

On redirect examination, Mrs. Holder testified that, based on the information she had, the victim presented nothing inconsistent with someone who might fit the child sexual abuse accommodation syndrome. Defense counsel waived recross-examination.

On appeal appellant asserts that the military judge improperly restricted defense counsel during cross-examination by disallowing defense counsel from reading from Dr. Coleman's article in *Forum* magazine, as the article was a learned periodical encompassed by Mil.R.Evid. 803(18), Manual for Courts–Martial, United States, 1984. We disagree. Because the defense failed to establish the proper evidentiary foundation— that Dr. Coleman's article was a reliable expert publication—we conclude that the military judge properly denied the defense the opportunity to cross-examine Mrs. Holder using this otherwise inadmissible hearsay either as substantive evidence or as a basis of impeachment.

## II

### A

Mil.R.Evid. 803(18) [3] states that the following is "not excluded by the hearsay rule":

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

This rule allows authoritative publications in particular subject areas to be used as substantive evidence, provided certain conditions are met: "[T]here must be a preliminary showing that the" publication's authority "is reliable," and the evidence must be "treated as testimony" and "introduced orally." J. Weinstein & M. Berger, 4 *Weinstein's Evidence* (hereafter *Weinstein's Evidence*) ¶ 803(18)[01] at 803–371 and 803–373 (1994).[4]

3. The Military Rule is identical to the Federal Rule except for use of the words "the expert" in lieu of "the expert witness" regarding direct examination. Drafter's Analysis to Mil.R.Evid. 803(18), Manual for Courts–Martial, United States, 1984, at A22–50 (Change 2).

4. Another authority concisely states the requirements of this rule as follows:

Mil.R.Evid. 803(18) expressly requires that statements in question be published in treatises, periodicals, or pamphlets that are "reliable authority." *See United States v. Jackson*, 38 MJ 106 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). Thus, the publication must be shown to be one that is "currently accepted and recognized as authority in the profession." E. Imwinkelried, P. Giannelli, F. Gilligan, F. Lederer, *Courtroom Criminal Evidence* § 1228 at 350 (2d ed. 1993).

Mil.R.Evid. 803(18) expressly sets forth the three methods available to establish the authority of the publication: (1) by testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice. "The proponent of the treatise [or other publication] may not read from it or question the expert in regard to it except as to its status as an authority, until its authoritativeness has been established to the satisfaction of the trial judge, and its relevancy to a material, consequential fact has been shown." *Weinstein's Evidence, supra,* ¶ 803(18)[02] at 803–377 to 803–378 (footnote omitted). Thus, publication alone does not automatically establish a particular writing as reliable authority; instead, its reliability must be established by proving its authoritative nature via any of the three available means previously mentioned. *Meschino v. North American Drager, Inc.,* 841 F.2d 429, 433–34 (1st Cir. 1988).

■ Accordingly, the central question in this case is whether defense counsel, as the proponent of the evidence, laid a proper foundation for admission of Dr. Coleman's article as substantive evidence through the

hearsay exception of Mil.R.Evid. 803(18). *See Schneider v. Revici,* 817 F.2d 987, 991 (2d Cir.1987). A determination of the military judge on admissibility of such evidence will not be disturbed absent a clear abuse of discretion. *United States v. Jenkins,* 27 MJ 209 (CMA 1988); *United States v. Mukes,* 18 MJ 358 (CMA 1984). *See also Weinstein's Evidence, supra,* ¶ 803(18)[02] at 803–378.

■ We conclude that the military judge here did not abuse his discretion in prohibiting cross-examination of Mrs. Holder regarding the published article of Dr. Coleman, because defense counsel failed to establish the proper evidentiary foundation of reliability. Indeed, counsel did not even *attempt* to establish the evidentiary foundation by using any of the three methods authorized by Mil. R.Evid. 803(18). Counsel did establish that Mrs. Holder thought she had "scanned" the article, but this surely was not adequate to establish it as any authority. As defense counsel made no attempt to establish Dr. Coleman's qualifications or the text's status as a standard authority, the military judge properly sustained trial counsel's objection to the text as substantive evidence and prevented defense counsel from "reading from a book or article . . . ." [5]

## B

■ It is equally clear that the military judge did not improperly restrict defense counsel's attempt to impeach Mrs. Holder's testimony by cross-examining her through Dr. Coleman's work. In *Reilly v. Pinkus,* 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949), the Supreme Court did recognize the right to cross-examine witnesses "concerning

---

To be used, treatises must be reliable. Reliability can be established through the witness' testimony, through subsequent expert testimony, or by judicial notice. If reliable, the treatise can be used on direct examination if relied upon by the expert, and on cross-examination if called to the attention of the expert. The cross-examiner may use the treatise whether or not the expert agrees that it is reliable and whether or not the expert ever has seen the treatise before. A treatise may be read to the finders of fact, but may not be given to them as an exhibit, unless it is not feasible to read the treatise. . . .

S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 804 (3d ed.1991).

**5.** The proper method of laying the evidentiary foundation is presented in a variety of books on evidence and trial practice. *See, e.g.,* E. Imwinkelried, P. Giannelli, F. Gilligan, F. Lederer, *Courtroom Criminal Evidence* § 1229 at 352–53 (2d ed. 1993). Opposing counsel waives any deficiencies in the foundation by failing to object. Mil.R.Evid. 103(a)(1), Manual for Courts–Martial, United States, 1984; *United States v. Jackson,* 38 MJ 106 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994).

statements in other medical books, some of which at least were shown to be respectable authorities." 338 U.S. at 275, 70 S.Ct. at 114. The Court reasoned:

> It certainly is illogical, if not actually unfair, to permit witnesses to give expert opinions based on book knowledge, and then deprive the party challenging such evidence of all opportunity to interrogate them about divergent opinions expressed in other reputable books.

338 U.S. at 275. Indeed, impeachment with a learned publication is a valid tactic in all jurisdictions. P. Giannelli & E. Imwinkelried, 1 *Scientific Evidence* (hereafter *Scientific Evidence* ) § 5–9 at 160 (2d ed 1993); *see, e.g., United States v. Jackson, supra; United States v. Benedict,* 27 MJ 253 (CMA 1988). However, there is some disagreement regarding the conditions under which a publication may be used for this purpose; yet it is clear that a condition precedent to such an impeachment effort is that the cross-examiner establish the publication as a recognized or reputable authority, through the witness or other means.[6] *See Reilly v. Pinkus,* 338 U.S. at 275, 70 S.Ct. at 113; 1 *Scientific*

*Evidence, supra* at 160; 6 Wigmore, *Evidence* § 1700 at 25 (Chadbourn rev.1976).

In the present case, as we pointed out earlier, defense counsel failed in any way to establish as reputable authority either Dr. Coleman's article or Dr. Martin's "developing idea." Considering this foundation defect and trial counsel's objections, the judge properly prohibited defense counsel from using this material to impeach Mrs. Holder.[7] In this connection, we note that the military judge did not otherwise limit the defense cross-examination of Mrs. Holder.[8]

### III

As the military judge did not abuse his discretion either in excluding the defense proffered hearsay as substantive evidence or in restricting defense cross-examination of Mrs. Holder, we find no merit in appellant's claim of error.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.

6. This case does not present a need for this Court to decide what means may be used to establish the authority of a publication to be used in cross-examination for impeachment, and the issue was not briefed or argued by the parties. *See generally* Fed.R.Evid 803(18), Commentary, J. Weinstein & M. Berger, 4 *Weinstein's Evidence* ¶ 803(18)[02] at 803–376 to 803–380.

7. As trial counsel made no objection to defense counsel's initial question to Mrs. Holder regard-

ing Dr. Coleman's article, the military judge could permit defense counsel to question her with respect to this article. *See* Mil.R.Evid. 103(a)(1).

8. This case is distinguished from *United States v. Banks,* 36 MJ 150 (CMA 1992), where it was error to deny the defense expert witness the opportunity to discuss and to challenge the reliability of references and data previously discussed by the prosecution's expert. *Id.* at 167.