**UNITED STATES**

v.

**Technical Sergeant Kenneth D. PAGEL, FR558–35–7862 United States Air Force.**

**ACM 30185.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 18 June 1992.

Decided 12 Aug. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Captain Jane M.E. Peterson.

Before SNYDER, RAICHLE, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Court members convicted appellant of one specification of attempting to commit carnal knowledge with, two specifications of committing sodomy with, and two specifications of committing indecent acts upon, a minor. Articles 80, 125, and 134, UCMJ, 10 U.S.C. §§ 880, 925, and 934 (1988). The court members sentenced appellant to a bad-conduct discharge, confinement for 8 years, and reduction to E–3. Appellant alleges the military judge made six errors: (1) admitting dysfunctional family profile evidence; (2) excluding evidence of the victim's prior sexual history (MIL.R.EVID. 412); (3) denying a challenge for cause; (4) refusing to instruct during sentencing on appellant's lack of adverse disciplinary record; (5) admitting a transcript of an interview with the victim; and (6) allowing Captain Revis to testify in rebuttal. We disagree and affirm.

### I. Dysfunctional Family Profile Evidence

#### A. Facts

In her opening statement, trial counsel told the members that they would hear testimony from two important witnesses. JP, appellant's 14–year–old daughter, would describe the abuse she suffered at the hands of appellant. Captain Revis, a family advocacy officer and clinical child psychologist, would testify about the "dynamics of an incestuous child sexual abuse situation;" his evaluation of, and counseling with, JP; and his opinion that the information he had learned about the case was "consistent with a case of child abuse."

In his opening statement, the civilian defense counsel stated that the defense would show that JP was not telling the truth and that, because of the inconsistent stories she had told about the allegations, she should not be believed.

JP testified that, while her mother was at work, appellant licked her vagina, forced her to suck his penis, attempted to have intercourse with her, and touched her in indecent ways. On cross-examination, the defense tried to discredit JP and show that her actions were inconsistent with what one would

expect of a victim of sexual abuse. The defense noted her failure to promptly report the abuse to authorities; her failure to tell law enforcement agents, without suggestive promptings, specifically what appellant had done to her; her making a special birthday card for her father after she made the allegations against him; and her faking fellatio with a boyfriend, despite her description of the sodomy with her father as nasty and scary.

After Captain Revis was qualified as an expert in the diagnosis and treatment of child sexual abuse, the trial counsel asked him to describe the common characteristics of a family in which sex abuse occurred. Appellant initially objected that Captain Revis was testifying beyond his area of expertise, but withdrew it after the witness clarified his qualifications. Captain Revis testified that such a family would be dysfunctional in many ways: (1) children assume adult roles; (2) the victim has a strained relationship with the parent of the same gender; (3) the father is usually the perpetrator; (4) the mother is impassive, ineffectual, and emotionally dependent; (5) the perpetrator fails to appropriately discipline his children; (6) the perpetrator is a substance abuser; and (7) the husband and wife have sexual difficulties. Captain Revis listed all of the reports and information he had examined about the family and its individual members.

Appellant next objected to Captain Revis testifying about specifics of appellant's family life that matched the characteristics of a family in which child abuse might occur, and from which court members might infer that it did occur. Originally framed as an objection to specifics and then a motion for a limiting instruction, defense counsel later suggested it was more of a relevance objection under MIL.R.EVID. 403. The military judge offered appellant an out-of-court hearing on the issue. Appellant did not see the necessity for such a hearing and accepted the military judge's offer of a limiting instruction. Trial counsel then stated, in front of the court members, that she intended to ask Captain Revis if he found any of these common characteristics in appellant's family situation from which an inference of child sexual

abuse could be drawn. The defense made no further objection. The military judge agreed to give a limiting instruction at an appropriate time, but overruled the defense objections. Captain Revis then testified to his findings: (1) the members of appellant's family exhibited dysfunctional relationships; (2) JP's brothers had disciplinary problems; (3) appellant and his wife had marital problems; and (4) appellant had a history of alcohol abuse.

Without objection, Captain Revis testified to these common characteristics that victims of incestuous relationships exhibit: (1) feelings of guilt and shame; (2) feeling like she is dirty; (3) poor peer relationships; (4) feelings of failure; (5) feelings of hopelessness; and, (6) acting out—becoming a disciplinary problem. Captain Revis found JP's behavior manifested several of these characteristics. Based on everything he knew about the case, Captain Revis testified that it was consistent with child sexual abuse having occurred. He further stated that if someone were making up a story of child sexual abuse, he would expect to find that the individual had a personality disorder or at least exhibit symptoms of such a disorder. He had tested JP and found she did not have any such disorder.

During the questioning, a court member asked what, if any, evidence, other than the personality test, did Captain Revis consider in determining whether the victim was telling the truth. The military judge instructed the members *sua sponte* that Captain Revis was not testifying as to whether JP was telling the truth, but merely "whether family background was consistent with her having been abused." No other limiting instruction was either asked for by the defense or given by the military judge.

In findings argument, trial counsel told the members that Captain Revis' testimony corroborated JP's allegations of sexual abuse and "her description of the abuse Dr Revis told you is consistent with sexual abuse." Trial counsel further argued:

What you saw, members of the court, as much as possible in a three day time period, was portrayed a classic textbook example of a dysfunctional family where the mother had suffered previous abuse, where there is alcohol abuse involved, where there is trouble—disciplinary acting out problems with the children, and all the other things that Dr Revis describe (sic) to you that were common characteristics of a situation where incest is likely to occur or where it commonly occurs.

Now, of course, Dr Revis isn't telling you that because of these factors that are common to an incestuous situation were present, some of the factors were present in this particular, that that means the abuse occurred or didn't occur. Obviously, the prosecution didn't present it in that light. So, what it is is it is corroboration that in fact many of the factors that make a family vulnerable to this type of a situation are present in the accused situation. What [JP] told Dr Revis was consistent with sexual abuse having occurred—the way she told it and the manner that it—occurred.

The civilian defense counsel argued that JP was not telling the truth; that she was just trying to get some attention; and, that the specific details of JP's story were the result of overly suggestive questioning by investigators. In rebuttal, the trial counsel argued that, contrary to the assertions of defense counsel, JP was not a demonic child who was lying about the charges against her father. "And did Dr Revis tell you he saw any signs that would indicate he was dealing with a demon child here? None, whatsoever."

Appellant claims this "profile" evidence of a dysfunctional family is specifically prohibited by *United States v. Banks,* 36 M.J. 150 (C.M.A.1992), and should not have been admitted.

### B. Law

■ Generally, it is improper to admit evidence that tends to show that the typical perpetrator of a type of crime has certain characteristics and this particular accused has a "profile" that is consistent with that of the typical perpetrator. *Id.* at 161 (citing *United States v. Garcia,* 25 M.J. 159 (C.M.A. 1987) (summary disposition) and *United*

*States v. August*, 21 M.J. 363, 364 (C.M.A. 1986)). Such evidence tends to focus the factfinder on deciding whether the accused's character is consistent with the profile rather than whether this accused actually committed the acts alleged. *Banks*, 36 M.J. at 161.

MIL.R.EVID. 404(a) specifically prohibits admitting evidence of an accused's or victim's character for the purpose of proving that he or she acted in conformity therewith on a particular occasion, unless it is offered by the accused or by the prosecution to rebut defense character evidence. "Profile" evidence may be admissible, however, to rebut potentially misleading evidence. *Banks*, 36 M.J. at 162. Absent plain error, however, we may not find the military judge erred in ruling on the admission of evidence unless the ruling materially prejudices a substantial right of appellant and appellant made a timely objection, stating the specific ground for the objection (unless the objection was apparent from the context). MIL.R.EVID. 103(a).

### C. Discussion

Appellant made three objections to the evidence. He withdrew his first objection, to the witness testifying beyond his expertise, after Captain Revis detailed his expertise in this area. His second objection was unfocused. At first, appellant alleged that Captain Revis should not be permitted to testify to specifics (not further defined), but he then asked for a limiting instruction instead. Finally, the civilian defense counsel told the military judge that it was "more of a 403 objection under relevance." Appellant accepted the military judge's offer of a limiting instruction and declined his offer of an out-of-court hearing to discuss his objections to the evidence. The military judge gave a limiting instruction when a court member questioned the use of this evidence. Under these circumstances, we find appellant failed to preserve this issue. The military judge did as appellant requested; he gave an instruction limiting the purposes for which the court members could use the profile evidence.

Even absent a focused objection, appellant still is entitled to relief if the admission of this evidence constitutes plain er-
ror. MIL.R.EVID. 103(d). To constitute plain error, appellant must show the error was obvious, substantial, and had an unfair prejudicial impact on the court's deliberations. *United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Fisher*, 21 M.J. 327 (C.M.A.1986). Plain error is error that " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Olano*, —— U.S. at ——, 113 S.Ct. at 1779, *quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *Fisher*, 21 M.J. at 328. Thus, the doctrine should be invoked " 'sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " *Olano*, —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); *Fisher*, 21 M.J. at 328–29. We will apply the plain error doctrine when an accused forfeits the error, not when he waives it. *See United States v. Toro*, 37 M.J. 313, 316–17 (C.M.A. 1993); *United States v. Strachan*, 35 M.J. 362, 364 (C.M.A.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993).

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *Toro*, 37 M.J. at 320 (Sullivan, C.J., concurring in the result) (quoting *Olano*, —— U.S. at ——, 113 S.Ct. at 1777). On these facts, we find that appellant voluntarily and intentionally relinquished this issue by accepting the military judge's offer of a limiting instruction in lieu of an Article 39(a), UCMJ, session. *Cf. United States v. Spears*, 39 M.J. 823, 824 (A.F.C.M.R.1994).

Even if we were to find that appellant had not affirmatively waived the issue, no relief would be warranted. The Court of Military Appeals' decision in *Banks*, denouncing the use of profile evidence as substantive evidence of guilt, was decided 2½ months after this case was tried. Therefore, in order to determine if the error was obvious, we must review the cases available to the military judge at the time he made his ruling. In *August*, the military judge per-

mitted the prosecution to present, in rebuttal, profile evidence of a "usual" child sex abuser which happened to fit the profile of the accused. The Court of Military Appeals held that such profile evidence normally would not be relevant, but might be marginally relevant in rebuttal. *August*, 21 M.J. at 364. In that particular case, the Court found error because the expert witness was not qualified as an expert in child abuse, the source of his information was suspect, and there was no evidence to establish that the abuser profile was scientifically valid. In *Garcia*, the Court of Military Appeals, in a summary disposition, held that the admission of testimony that appellant's psychological profile was consistent with that of persons who sexually abuse children was error. Nevertheless, the Court affirmed the conviction based on the failure of the accused to object and the action was not plain error. *Garcia*, 25 M.J. at 159. Based on the state of the law at the time the military judge's ruling was made, we are unwilling to find he committed plain error.

## II. Victim's Sexual History

Prior to trial, appellant properly notified the prosecution and the military judge that appellant would elicit testimony at trial of seven incidents of JP's past sexual behavior. MIL.R.EVID. 412(c)(1).

(1) JP was indecently assaulted by Jerry, an adult acquaintance of the family, sometime within the time frame of the charges;

(2) JP engaged in consensual sexual intercourse with a boy, Dominick;

(3) JP engaged in consensual sexual intercourse with another unnamed individual;

(4) JP was observed on her knees in a position to perform fellatio on a boy named Jesus;

(5) JP was observed on her knees in a position to perform fellatio on a boy named Dominick;

(6) JP had been fondled by several teenage boys;

(7) JP was assaulted by an unknown assailant in her quarters.

Appellant asserted, in the notice, that the admission of this evidence was constitutionally required, MIL.R.EVID. 412(b)(1), in that it shows another source of information and experience from which the alleged victim could have learned the terminology and descriptions for various sexual actions which allegedly were performed upon her by the accused. A panel could well believe that such terminology and descriptions would not be within the normal experience of a person of the alleged victim's age.... Without this evidence, therefore, the panel might conclude that only the alleged actions by the accused could have provided the knowledge and experience for the testimony of the alleged victim.

In an Article 39(a), UCMJ, session, the defense asserted that the government's own expert witness, Captain Revis, had prepared a psychological evaluation of JP which allegedly stated, "based upon consistency of detail, emotional tone, and the pattern of sexual abuse described, (of which the victim would not have knowledge unless they were experienced), it's my opinion that these allegations are true."

The prosecution moved *in limine* to keep all of this evidence from the court members. The military judge lumped the seven incidents into three general categories: (1) instances of molestation (items 1, 6, and 7); (2) instances of sexual intercourse (items 2 and 3); and (3) instances of apparent or alleged fellatio (items 4 and 5). The military judge found the instances of molestation and sexual intercourse were neither relevant nor material and, therefore, not admissible. The military judge found the instances of fellatio to be relevant, material, and favorable to the defense, but refused to permit extrinsic evidence on the issue. His analysis of the issues is not apparent from his ruling.

After the prosecution presented its case-in-chief, appellant asked the military judge to reconsider his ruling as to item 1, stating that "in good faith," he could not say evidence had been adduced that would permit the admission of items 2, 3, 6, or 7. Appellant asserted that item 1, the evidence of the sexual assault by Jerry, would be relevant to show that JP was confused as to the perpe-

trator of the molestation and had a motive to lie. The military judge reconsidered, but adhered to his previous ruling.

On appeal, appellant concedes trial defense counsel in effect waived any objection to the military judge's ruling as to items 2, 3, 6, and 7, but challenges the military judge's ruling with respect to item 1. He asserts that the evidence was relevant, material, and favorable to the defense; the evidence does not fall within MIL.R.EVID. 412 because it is not an embarrassing consensual act against which the rule was supposed to protect victims; the evidence was admissible to show that the victim had knowledge of such sexual matters from a source other than appellant; and, the evidence was admissible to show the victim had a motive to lie.

 Despite the restrictions contained in MIL.R.EVID. 412, an accused is entitled to the admission of evidence of the past sexual behavior of an alleged victim with persons other than the accused if he can establish that admission of the evidence is constitutionally required. MIL.R.EVID. 412(b)(1). Unless the substance and materiality of the evidence the accused seeks to have admitted are obvious, his offer of proof must clearly identify the significance of the evidence. *United States v. Means,* 24 M.J. 160, 163 (C.M.A.1987). We review the military judge's ruling excluding defense evidence under MIL.R.EVID. 412 for an abuse of discretion. *United States v. Williams,* 37 M.J. 352, 361 (C.M.A.1993).

 The Supreme Court has held that evidence is constitutionally required if it is relevant, material, and favorable to the defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). The Court of Military Appeals has "unequivocally" adopted this holding for military cases. *United States v. Williams,* 37 M.J. 352, 361 (C.M.A.1993) (citing *United States v. Dorsey,* 16 M.J. 1 (C.M.A.1983)).

 The Military Rules of Evidence have combined the common law concepts of relevance and materiality into one rule of relevancy. *See* S. SALTZBURG, L. SCHINASI, & D. SCHLUETER, MILITARY RULES OF EVIDENCE

MANUAL 422 (3d ed. 1991). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MIL.R.EVID. 401. But, in analyzing relevance, we still must confront two questions: (1) Does the evidence have any tendency to make the existence of any fact more or less probable?; and (2) Is that fact of consequence to a determination of appellant's guilt?

 According to appellant, JP was indecently assaulted by a man named Jerry when appellant's family stayed overnight at his trailer. Jerry fondled JP, kissed her, and got on top of her. Appellant was charged with, and convicted of, committing a series of sexual acts with JP, to include fellatio and cunnilingus over a two year period of time. We fail to see how a 14–year–old girl would confuse these two events. Without the proffer of expert testimony that such confusion is reasonable, the evidence just would not have any tendency to prove any fact of consequence to appellant's guilt.

Likewise, we are unconvinced with appellant's claim that MIL.R.EVID. 412 does not apply to this evidence because it is not an embarrassing consensual act. Appellant has not cited, and we have been unable to find, any case which supports this restrictive interpretation of the rule. Furthermore, absent plain error, we decline to accept such an assertion after the defense specifically chose to litigate this issue under MIL.R.EVID. 412. Under these circumstances, we find the military judge did not err.

 Appellant's third ground for admitting JP's past sexual behavior is premised on a conclusion that, without evidence of JP's prior sexual behavior, the court members would have believed that the only way for her to have learned the specifics of such acts was for her father to have been the perpetrator. Appellant cites Captain Revis' psychological evaluation of JP, not admitted into evidence, in support of this theory. We are not convinced that the fact that Jerry fondled, kissed, and got on top of JP would tend to show that is from whom she obtained her

knowledge of fellatio, cunnilingus, and other sex acts.

■ Appellant also asserted that evidence of JP's prior sexual behavior was admissible to show she had a motive to lie. After all, the Supreme Court has held that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination under the sixth amendment. *United States v. Bahr*, 33 M.J. 228, 232 (C.M.A.1991) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986) and *Davis v. Alaska*, 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974)). However, when you look beneath the surface, this theory is very shallow. In almost every contested sexual offense case, the defense challenges the testimony of the victim. The victim is confused, misunderstood what happened, or is lying. But, merely claiming the victim has a motive to lie is not sufficient to permit evidence on the issue. The defense must show that the evidence in question makes the existence of a motive to lie more probable. Here, the defense did not met its burden of showing how Jerry's assault on JP gave her a motive to lie.

■ What "favorable to the defense" means has been the subject of varying opinions; however, the Supreme Court specifically rejected the "conceivable benefit" test. "If we require only a showing that a witness could provide some 'conceivable benefit' to the defense, then 'the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel.'" *Williams*, 37 M.J. at 361 (Gierke, J., concurring) (quoting *Valenzuela–Bernal*, 458 U.S. at 866–67, 102 S.Ct. at 3446). It appears that the Supreme Court requires that the evidence be "vital to the defense" when "evaluated in the context of the entire record." *Valenzuela–Bernal*, 458 U.S. at 867–68, 102 S.Ct. at 3446–47. We find that this evidence was not vital to the defense when evaluated in the context of the entire record.

Mil.R.Evid. 412(c)(3) seems to impose an additional requirement—that the probative value of the evidence not be outweighed by the danger of unfair prejudice. If evidence is truly constitutionally required, it is incongruent to impose a balancing test on its admission, and we will not do so. *See United States v. Dorsey*, 16 M.J. 1, 8 (C.M.A.1983).

Based on the representations made to the military judge, we are convinced he did not err. Even if the military judge erred, we do not find it was an abuse of discretion.

### III. Challenge for Cause

In 1975, before her entry into the Air Force, Major Scherberger, a court member, served as a volunteer at a rape crisis center. Major Scherberger taught women self-defense, how to make their homes burglar proof, and how to avoid becoming a rape victim. As an instructor at the Air Force Academy, she taught self-defense to female cadets. She never counseled rape victims or victims of child abuse. During voir dire, Major Scherberger maintained her flexibility when asked by the defense if she thought incarceration would be necessary for someone convicted of these offenses. While she initially suggested the Air Force drawdown might have some impact on her decision whether or not one convicted of these offenses should remain in the Air Force, she fully accepted the military judge's explanation of the difference between administrative and punitive discharges and the duties of a court member in that regard. Appellant challenged her for cause because of her "commitment to the female as a victim." The military judge denied the challenge.

■ Military appellate courts have long recognized that challenges for cause should be liberally granted. *United States v. McLaren*, 38 M.J. 112, 118 (C.M.A.1993) (citing *United States v. Glenn*, 25 M.J. 278, 279 (C.M.A.1987)). At the same time, on appeal, we grant the military judge great deference in his ruling on challenges. We will not reverse absent a clear abuse of discretion in applying the liberal-grant mandate. *McLaren*, 38 M.J. at 118 (citing *United States v. White*, 36 M.J. 284, 287 (C.M.A.1993)). We believe the military judge correctly denied the challenge.

### IV. Sentencing Instruction

Appellant asked the military judge to instruct the members, as a matter in mitiga-

tion, that he had no previous disciplinary record. The military judge refused stating that the evidence did not establish that fact, and even if it did, such an instruction was not required by *United States v. Wheeler*, 17 U.S.C.M.A. 274, 38 C.M.R. 72, 76, 1967 WL 4375 (1967).

The military judge instructed the court members on the matters they should consider in arriving at a sentence, the types and amounts of punishments authorized (not just the maximums), and the procedures for deliberating and voting. He specifically told them:

> In determining a sentence you must consider all the facts and circumstances of the offenses of which the accused stands convicted, and all matters presented concerning the accused. So, the matters you should consider include the accused's education, background, duty performance, decorations, prior honorable discharge, family and financial situation, and expressed desire to remain in the service. On the other hand, you should also consider the impact of the offenses on the victim.

Citing Department of the Army Pamphlet 27–9, *Military Judge's Benchbook*, at 245 (May 1982) and *United States v. Wheeler*, 17 U.S.C.M.A. 274, 38 C.M.R. 72, 76, 1967 WL 4375 (1967), appellant claims the military judge erred by failing to specifically instruct the members that he had no record of adverse disciplinary actions.

In *Wheeler*, the Court of Military Appeals held that the law officer had a duty to tailor sentencing instructions to the law and the evidence. Instructions which merely stated the maximum authorized punishment and advised the court members of the voting procedures are inadequate. *Wheeler*, 38 C.M.R. at 75–76, 1967 WL 4375 Even if the military judge's instructions are inadequate, however, no relief will be granted absent a showing of prejudice. *United States v. Mabry*, 17 U.S.C.M.A. 285, 38 C.M.R. 83, 1967 WL 4378 (1967). In examining cases for prejudice, the Court seems to have focused on comparing the harshness of the sentence with the amount of mitigation presented. *See United States v. DeShazo*, 17 U.S.C.M.A. 472, 38 C.M.R. 270, 1968 WL 5387 (1968); *United States v. Parker*, 17 U.S.C.M.A. 545,

38 C.M.R. 343, 1968 WL 5414 (1968). If the sentence was substantial, prejudice was presumed. *Parker*, 38 C.M.R. at 345.

The military judge has substantial discretionary power in determining which instructions to give. *Cf. United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (holding applies to findings but is based on R.C.M. 920(c) Discussion, which is almost identical to language of R.C.M. 1000(e) Discussion, which applies to sentencing). The military judge is required to instruct on the maximum and minimum sentences authorized; the procedures to be used for deliberating and voting; that the members are solely responsible for selecting the appropriate sentence and may not rely on the possibility of mitigating action by higher authority; and that the members should consider all matters in extenuation, mitigation, and aggravation introduced before or after findings and all matters presented under R.C.M. 1001(b)(1), (2), and (5). R.C.M. 1005(e). We review the military judge's refusal to give the requested instruction using an abuse-of-discretion standard. *Damatta–Olivera*, 37 M.J. at 478.

We agree with the military judge's resolution of this issue. During appellant's trial, there was no evidence to establish whether appellant did or did not have a prior disciplinary record. While one could surmise that he did not have such a record because the prosecution did not attempt to introduce it, we are unwilling to do so. There are many reasons why such prior disciplinary action would not be admissible, including staleness. *See* Air Force Regulation 111–1, *Military Justice Guide*, ¶ 13–4b (9 March 1990). Furthermore, whether the issue has been raised by the evidence or not, such an instruction is not required to fully comply with the *Wheeler* mandate. It is sufficient to instruct the members to consider all the facts in the case, and then reference, in general, any other applicable evidence, such as any extenuation or mitigation; the accused's background; his character, and his record in the service for good conduct and efficiency. *United States v. Holcomb*, 18 U.S.C.M.A. 202, 39 C.M.R. 202, 1969 WL 5950 (1969). These instructions sufficiently remind the court members of the matters they should consider in determining an appropriate sentence.

## V. Rebuttal

██ Absent a clear abuse of discretion, normally we will not disturb the military judge's ruling on the admission of rebuttal evidence. *United States v. Rodriguez*, 37 M.J. 448, 449 (C.M.A.1993). "It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Hallum*, 31 M.J. 254, 255 (C.M.A.1990).

### A. Admission of Interview Transcripts

Captain Revis testified concerning statements JP made to him during interviews and evaluation sessions. During his cross-examination, the civilian defense counsel vigorously questioned Captain Revis about the interviewing techniques he used with JP. Apparently using a transcript of one of Captain Revis' interviews with JP, the civilian defense counsel quoted particular questions and suggested to Captain Revis' that his interviewing techniques had improperly influenced and reinforced JP's story. To rebut this suggestion, the prosecution offered into evidence the full transcript, authenticated by Captain Revis, so the court members could decide for themselves whether Captain Revis had been overly suggestive. The tapes from which the transcript had been prepared had been reused and so were not available. The military judge sustained the defense objection to the admission of this evidence apparently fearing that the 36–page document would be more prejudicial than probative. The trial counsel then moved to admit the transcripts under MIL.R.EVID. 801(d)(1)(B) and 803(4). After requiring some redactions, the military judge conducted another MIL. R.EVID. 403 balancing and admitted the document.

██ The military judge admitted the redacted transcript under MIL.R.EVID. 803(4), as a statement for purposes of medical diagnosis or treatment, and under MIL.R.EVID. 801(d)(1)(B), as a prior consistent statement to rebut a charge that Captain Revis had improperly influenced JP. Appellant contends the transcript should not have been admitted in any form. We find the military judge's decision to admit the document was appropriate rebuttal to the defense attack on Captain Revis' interviewing techniques.

### B. Captain Revis' Testimony

In an Article 39(a) session, the trial counsel announced that she intended to call Captain Revis to testify in rebuttal to (1) the relationship between JP's mother having been the victim of sexual abuse when she was a child and the dysfunctional family profile, (2) the meaning of the outwardly excellent rapport between appellant and JP, and (3) whether JP's "acting out for attention" was consistent with having been sexually abused. Appellant objected to (1) and (2) on the basis that Captain Revis was aware of these matters when he testified in the case-in-chief and such testimony would be "rehashing and bolstering." The military judge overruled the objection. When the trial counsel asked Captain Revis to comment on the defense suggestion that JP made the allegations against appellant to get attention, Captain Revis testified, "If attention was the sole motive, [JP] would have buckled a long time ago." The military judge sustained the defense objection to that answer.

██ We hold the military judge did not abuse his discretion in permitting this rebuttal. The defense had tried to establish that the family appeared to be normal, that JP has a good relationship with her father, and that she accused him of molesting her as a way to seek attention. Captain Revis' testimony clearly explained and counteracted such evidence and was properly admissible under MIL.R.EVID. 801(d)(1)(B) and 803(4). *See Banks*, 36 M.J. at 162.

## VI. Conclusion

The findings and sentence are correct in law and fact, and no errors prejudicial to the substantial rights of appellant were committed. Accordingly, the findings and sentence are

AFFIRMED.

Senior Judges SNYDER and RAICHLE concur.