UNITED STATES, Appellee

v.

**Kenneth D. PAGEL, Technical Sergeant
U.S. Air Force, Appellant.**

No. 94–1341.
CMR 30185.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 3, 1995.

Decided Sept. 18, 1996.

For Appellant: *Captain J. Knight Champion III* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on brief); *Major John H. Kongable.*

*Opinion of the Court*

CRAWFORD, Judge.

In June 1992, contrary to his pleas, appellant was convicted at Spangdahlem Air Base, Germany, by a general court-martial composed of officer and enlisted members of attempted carnal knowledge, sodomy (2 specifications), and committing indecent acts (2 specifications), all between July 27, 1987, and October 16, 1989, and all with a minor, in violation of Articles 80, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 925, and 934, respectively. The convening authority approved the sentence of a bad-conduct discharge, 8 years' confinement, and reduction to airman first class (E–3). The Court of Military Review * affirmed the findings and sentence. 40 MJ 771 (1994). We granted review of the following issues:

* *See* 41 MJ 213, 219 n. * (1994).

## I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING DR. REVIS, THE GOVERNMENT EXPERT IN THE DIAGNOSIS AND TREATMENT OF CHILD SEX ABUSE, TO TESTIFY ABOUT PROFILE EVIDENCE OF A "DYSFUNCTIONAL FAMILY."

## II

WHETHER THE MILITARY JUDGE ERRED IN GRANTING THE PROSECUTION'S MOTION *IN LIMINE* REGARDING THE ALLEGED VICTIM'S HISTORY OF PRIOR SEXUAL BEHAVIOR, SPECIFICALLY THAT SHE HAD BEEN MOLESTED BY A MAN NAMED JERRY IN MONTANA IN THE SAME MANNER AS ALLEGED AGAINST APPELLANT, WHICH EVIDENCE WAS OFFERED TO SHOW THAT SHE WAS FAMILIAR WITH SEXUAL RELATIONS AND TERMS RELATED THERETO AND THAT APPELLANT WAS NOT THE SOURCE OF THAT KNOWLEDGE.

We hold that the judge did not abuse his discretion in allowing Dr. Revis' expert testimony and in ruling the defense proffered evidence of the victim's prior sexual activity inadmissible.

### FACTS—Issue I

During *voir dire,* the defense introduced the thrust of its case to the members that the victim, appellant's natural daughter J, was mistaken or lying.

In response to the *voir dire,* the prosecutor stated during the opening statement:

[W]e will call Dr. Revis. And Dr. Revis will tell you that he specializes in the area of treatment and assessment for evaluation of sex abuse on children. And he will tell you a little bit about sexual offenses against children and that in his career field, where as we may call it in the legal field indecent acts, sodomy, attempted carnal knowledge, that he has in his community and his profession another name for it which is child sex abuse. And he will tell you a little bit about the dynamics of an incestuous child sexual abuse situation.

And he will tell you that he in fact evaluated and counseled, and spoke with [J], as well as her mother. And he will tell you that based on the information provided to him through the Family Advocacy records, through his own personal contact with [J] and the Pagel family, and through his training and experience he will tell you that in his opinion what he has learned from [J] and about the information that was provided to him is that her behavior, the information that he has is consistent with a case of child sexual abuse.

During findings, defense counsel's cross-examination of J revealed that J: did not volunteer details to the Office of Special Investigations and refused to give details to the social workers; did not report the crime immediately; had an animus toward her father; and had earlier denied any misconduct by her father.

The prosecution called Dr. Revis, a clinical child psychologist, as an expert in the diagnosis and treatment of child sexual abuse. There were three objections to his testimony which form the basis for Issue I.

First, the defense objected to Dr. Revis' qualifications to answer a question about "common characteristics of a family" where child sexual abuse "might typically occur." The defense remarked that "the question is talking about the family involvement rather than specific diagnosis/treatment" of the abuse. The question was rephrased and Dr. Revis clarified part of his training. The defense withdrew its objection.

Next, Dr. Revis was asked:

Q. Can you tell the court members then, based on your experience and training, what have been established as common dynamics and characteristics of the family where—and I'm talking now just about the general family dynamics?

A. Yes, general family dynamics—the first thing we notice is that the family is dysfunctional in many ways. For example, the child's role tends to be one of not always being in the role of a child. Sometimes assuming responsibilities that we

would commonly assign to adults. Relationships are usually strained with the parent of the same gender. In the parents what we see is we—we usually see is—this commonly occurs in sex abuse—in families where sex abuse occurs it's usually the male that's the perpetrator, the father, but there are cases where the mother is the perpetrator. But in the majority of the cases it's the father.

And usually what we see is the mother is very passive, ineffectual, she's emotionally dependent upon her husband, feels like she cannot survive without him emotionally or physically, is a very ineffective parent. What we see in the perpetrator, the dynamic of—not being involved in an adaptive way with the family, and that shows up in many different ways. It can show up in a way, for example, of not setting good limits for the children, not being a good disciplinarian or parent, and that will be real evident if the kids are running wild. We see substance abuse. We see marital conflict. There are sexual difficulties between the husband and wife. So those are—those are typical things we see.

Dr. Revis was then asked if appellant's family displayed any "common characteristics" of a dysfunctional family. He responded:

A. There is a well documented history of marital problems and of substance abuse. There has been ——

CIV DC: Your Honor, the defense is going to object. The witness we don't feel is required to go into any specific areas. He was asked a general question—whether he has been able to find documentation. We feel that perhaps a limiting instruction as to the purpose for which this information was brought might be appropriate if the Government is going to go into individual detail, now as well as at the time of instructions—essentially we don't get a misunderstanding of why this is being brought out.

MJ: Captain McLean?

TC: Do you want to know why I'm bringing this out, or what I feel about you giving an instruction?

MJ: Well, it was an objection, I think.

CIV DC: To the specifics being gone into as opposed to, yes, I see the pattern.

TC: Your Honor, I—the—I think the relevance, if that's a relevance objection—is that a relevance objection?

CIV DC: It's more of a [Mil.R.Evid.] 403 objection under relevance.

MJ: All right, do you want an out-of-court hearing on that, Mr. Court?

CIV DC: I'm not certain it goes that far, depending upon the Government's—if the Government understands what I'm saying. If the bench does, I don't know we'll need to do that.

MJ: All right.

TC: If I may just make this—what I intend to ask the witness is—of those characteristics that he just listed that were common in families where—common characteristics where this type of abuse occurs, which ones he's found in this situation. Obviously, the inference—we feel that it tends to provide information—background information from which an inference can be drawn and I intend to argue that ——

MJ: All right ——

TC: —— this family was ripe for this.

MJ: All right. The objection is overruled and I will give a limiting instruction at the appropriate time.

CIV DC: Thank you, Your Honor.

The judge granted the request for limiting instructions, and there was no further objection to the testimony.

The Court of Military Review described this sequence as follows:

Appellant next objected to Captain Revis testifying about specifics of appellant's family life that matched the characteristics of a family in which child abuse might occur, and from which court members might infer that it did occur. Originally framed as an objection to specifics and then a motion for a limiting instruction, defense counsel later suggested it was more of a relevance objection under Mil. R.Evid. 403. The military judge offered

appellant an out-of-court hearing on the issue. Appellant did not see the necessity for such a hearing and accepted the military judge's offer of a limiting instruction. Trial counsel then stated, in front of the court members, that she intended to ask Captain Revis if he found any of these common characteristics in appellant's family situation from which an inference of child sexual abuse could be drawn. The defense made no further objection. The military judge agreed to give a limiting instruction at an appropriate time, but overruled the defense objections. . . .

40 MJ at 774–75.

The third and final objection to Dr. Revis' testimony was that he was nonresponsive to one question. Trial counsel asked Dr. Revis if he was aware of what had been going on in J's life. Rather than offering a "yes" or "no" answer, he started to elaborate upon an explanation. The defense objected, and Dr. Revis, apparently understanding the defense's point, answered, "Oh, yes, yes." There were no more defense objections.

Dr. Revis testified that it is not necessary to believe the patient in order to render treatment. The doctor also recognized that questioning by law enforcement officials could cause problems in terms of the reliability of elicited statements. Dr. Revis also testified that interviewing techniques may reinforce the complaint that has been made. Realizing that he might also reinforce some of the patient's responses, he stated that he had attempted to avoid any such reinforcement.

Later, a court member asked, "[Dr.] Revis, I'd like to know what other factors did you consider, if any, besides the personality test that you mentioned to determine whether or not [J] was telling the truth?" Before a response was made by the witness, the judge interjected and gave an instruction that Dr. Revis was not testifying as to credibility. The judge cautioned that Dr. Revis was merely "present[ing] observations" concerning personality testing and family background, but that the ultimate issue of deciding credibility was up to the court members.

During cross-examination of Dr. Revis, the defense brought out the following evidence: unusual outward appearance does not indicate sexual child abuse; "a close relationship between father and daughter doesn't mean that there" was sexual abuse; and sexual child abuse can appear in many different situations.

In closing, the prosecution argued:

What you saw, members of the court, as much as possible in a three-day time period, was portrayed a classic textbook example of a dysfunctional family where the mother had suffered previous abuse, where there is alcohol abuse involved, where there is trouble—disciplinary acting out problems with the children, and all the other things that Dr. Revis describe[d] to you that were common characteristics of a situation where incest is likely to occur or where it commonly occurs.

Now, of course, Dr. Revis isn't telling you that because of [sic] these factors that are common to an incestuous situation were present, some of the factors were present in this particular [case], that that means the abuse occurred or didn't occur. Obviously, the prosecution didn't present it in that light. So, what it is is it is [sic] corroboration that in fact many of the factors that make a family vulnerable to this type of a situation are present in the accused[ ] situation. What [J] told Dr. Revis was consistent with sexual abuse having occurred—the way she told it and the manner that it—that it occurred.

## DISCUSSION

The instruction by the judge could have put both the prosecution evidence and the defense evidence in perspective. *See United States v. Suarez*, 35 MJ 374, 376 (CMA 1992). It did not. Nonetheless, there were no objections or requests for further instruction.

Both the prosecution and the defense seemed familiar with trial tactics concerning behavioral patterns in sexual abuse cases. Both sides sought to use the dynamics of child sexual abuse to their advantage. The defense sought to show that the victim must have been mistaken or lying by pointing to certain of the victim's behavioral characteristics such as refusing to give details, not

reporting the crime immediately—*United States v. Coleman,* 41 MJ 46, 47 (CMA 1994); *United States v. Houser,* 36 MJ 392, 395 (CMA 1993); *United States v. Suarez,* 35 MJ at 376—and initially denying that the conduct had occurred. Both sides also recognized that the expert could not testify as to credibility. *See United States v. Harrison,* 31 MJ 330 (CMA 1990); *United States v. Petersen,* 24 MJ 283 (CMA 1987). Further, the prosecution recognized that the dynamics in a family will not conclusively establish whether abuse has occurred.

The defense argues that this case is similar to *United States v. Banks,* 36 MJ 150 (CMA 1992), in regard to use of profile evidence and urges us to hold Dr. Revis' testimony inadmissible.

■ This case is distinguishable from *Banks.* In *Banks,* "[t]he prosecution ... offered a characteristic 'profile' to present appellant's family situation as ripe for 'child sexual abuse.' In effect, this profile purported to present the characteristics of a family that included a child sexual abuser." 36 MJ at 161. "The military judge fully understood that profile evidence is inadmissible. However, he mistakenly admitted this profile evidence because he erroneously assumed that the proffered profile involved only family traits in general and not traits of the accused." *Id.* at 163. There were strong objections to this evidence in *Banks.* To compound the issue in *Banks,* the judge excluded defense rebuttal evidence. In the present case, the evidence was used to explain the behavior of the alleged victim on the premise that she had been abused by someone, not necessarily appellant. Additionally, the prosecution, the defense, and the military judge were very sensitive to the issue and sought to keep it in context.

This Court on numerous occasions has recognized that the behavioral characteristics or behavioral patterns of an alleged victim in a sexual abuse case may need to be explained by expert testimony, especially where that behavior would seem to be counter-intuitive. Thus, the victim's behavior will not necessarily undermine his or her credibility if an expert can explain that such patterns of behavior often occur in sexual abuse cases. *See United States v. Suarez,* 35 MJ at 376.

Here, it appears that the testimony of Dr. Revis explaining the counter-intuitive behavioral characteristics of the victim did not exceed the permissible bounds of such evidence. Accordingly, we hold that there was an express waiver of any potential error that was not plain error.

### FACTS—Issue II

Prior to trial, the defense gave notice of its intent to offer the following evidence under Mil.R.Evid. 412, Manual for Courts–Martial, United States (1994 ed.). The offer was summarized by the court below as follows:

(1) JP was indecently assaulted by Jerry, an adult acquaintance of the family, sometime within the time frame of the charges;

(2) JP engaged in consensual sexual intercourse with a boy, Dominick;

(3) JP engaged in consensual sexual intercourse with another unnamed individual;

(4) JP was observed on her knees in a position to perform fellatio on a boy named Jesus;

(5) JP was observed on her knees in a position to perform fellatio on a boy named Dominick;

(6) JP had been fondled by several teenage boys;

(7) JP was assaulted by an unknown assailant in her quarters.

40 MJ at 777. The only portion of this proffer relevant to the granted issue is number (1) above. The defense clarified their proffer by expanding their notice as follows:

[J] was indecently assaulted by a male named "Jerry" during the time period between 4 June 1987 and 5 August 1989. The assault included fondling and an attempt by "Jerry" to "get on top of" the alleged victim. He also kissed her. These actions occurred in a trailer home in Montana. Due to the lack of specificity in specifications 1 and 2 of Charge I and in Charge II and Charge III, the defense is unable to state whether the actions by "Jerry" occurred before or after those charged against the accused.

The defense claimed that this information was "constitutionally required to be admitted" because it "show[ed] another source of information and experience from which the ... victim could have learned the terminology and descriptions for various sexual actions which allegedly were performed upon" J by her father. The Government responded with a motion *in limine* that this information was not relevant or material.

On the issue, defense counsel argued:

It's the defense's position that she—that if she experienced these types of activities with others than the accused, the panel could well believe that her allegations are either fabrications, fantasizing or otherwise inaccurate reflections and that the accused is not in fact the person who did molest her. For example, the fondling and getting on top of her—which is the specific allegation in Charge I—is something that occurred with Jerry. The fact that she has that experience in her background in the time frame in question could cause the panel to have a reasonable doubt that the accused did those things.

The military judge ruled that the alleged molestation by "Jerry" was not relevant or material, and declined to admit this information.

As appellant conceded in his brief, the defense requested that the military judge reconsider his ruling only with regard to the information about "Jerry," but "waived the motion with regard" to (2), (3), (6), and (7). Final Brief at 11. The defense theory of relevance now was that J confused the identity of the perpetrator—that it was "Jerry" who committed the alleged acts, not her father. As defense counsel argued:

Specifically, turning to Appellate Exhibit IV, which is the 12 June addendum by the defense, the one portion we are now seeking to have admitted through testimony is that found in paragraph one relating to her conduct—[J]'s conduct in Montana with a man named Jerry. The defense believes that based upon her testimony and description of an act by the accused, which is encompassed in Charge III, the attempted carnal knowledge, that evidence of Mrs.—

excuse me, of [J]'s having been subjected to that kind of activity by another individual is relevant to the panel to determine if [J] is perhaps mixing up or confused as to the origin of such an act, assuming that the act occurred. We believe that it would perhaps aid the Government, although that's not our intent, in confirming that some such action occurred with [J], but at the same time it would assist the defense clearly in showing a different perpetrator and allow the panel to draw their own conclusions.

The military judge adhered to his earlier ruling.

## DISCUSSION ISSUE II

The version of Mil.R.Evid. 412(b) in effect at trial provides:

Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

(1) admitted in accordance with subdivisions (c)(1) and (c)(2) [concerning notice, offer of proof, and hearing] and is constitutionally required to be admitted; or

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the nonconsensual sexual offense is alleged.

As we stated in *United States v. Sanchez*, 44 MJ 174, 179 (1996):

There are a number of instances where the evidence [of prior sexual behavior] would be constitutionally required, *e.g.*, when the victim's sexual history shows a

motive to fabricate the charge; or when "the rape charge might be used by the victim to explain her pregnancy, injury or, in the case of a minor, her absence from her home." Or, ... evidence may be constitutionally required when the victim has a motive to testify falsely to explain to her boyfriend why she was with another individual. . . .

(Citations omitted.)

■ Evidence is also constitutionally required to be admitted when the evidence is "so particularly unusual and distinctive as to verify the defendant's version." *Id.* at 179–80. .The evidence in this case is not admissible under any of those grounds. The defense presented no evidence of trauma. Further, the defense has not proffered any evidence to support its alternative ground that the 13–year–old witness may have confused the acts with "Jerry" and the acts with appellant. *See United States v. Buenaventura,* 45 MJ 72 (1996); *United States v. Gober,* 43 MJ 52, 55 (1995). Accordingly, the evidence concerning "Jerry" is inadmissible as being too speculative and thus not relevant.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (concurring in the result):

This case should be resolved on the basis of harmless error. I agree with Senior Judge Darden's resolution of Issue I. On Issue II, I am not convinced that evidence of the prior sexual molestation of the victim by "Jerry" around the time of the charged offenses was barred by Mil.R.Evid. 412, Manual for Courts–Martial, United States, 1984, or any other evidentiary rule. The time and nature of the prior sexual assault are, after all, similar to the charged acts. *See United States v. Bear Stops,* 997 F.2d 451, 455–57 (8th Cir.1993); *cf. United States v. Powers,* 59 F.3d 1460, 1470 (4th Cir.1995).

Also, a sexual assault on a victim in my view is not "sexual behavior" engaged in by the victim as provided in Mil.R.Evid. 412.

The challenged evidence was not evidence of prior promiscuity on her part. *See Commonwealth v. Baxter,* 36 Mass.App.Ct. 45, 627 N.E.2d 487, 491 (1994). Moreover, it was not offered for a purpose prohibited by Mil. R.Evid. 412, i.e., sexual predisposition. *See generally United States v. Begay,* 937 F.2d 515, 521 (10th Cir.1991). Instead, it was offered to show that the victim may have confused her father with "Jerry" in remembering these events.

However, any error in this regard I would find harmless beyond a reasonable doubt. For the above purpose, the probative value of this incident by itself was minimal. *See Commonwealth v. Syrafos,* 38 Mass.App.Ct. 211, 646 N.E.2d 429, 433 (1995).

DARDEN, Senior Judge (concurring in part and in the result):

The central dispute in this trial was whether there had been any sexual abuse of appellant's daughter. She said there was; but appellant claimed she was lying and pointed to such indicia as her refusing to give details of the alleged abuse, not reporting the abuse immediately, and initially denying it herself. In this context, the prosecution might have sought to bolster the daughter's assertion with expert testimony that child sexual abuse victims quite frequently, even typically, react in this manner. *See generally United States v. Banks,* 36 MJ 150, 162 (CMA 1992)(One of three "narrow and limited circumstances" in which profile evidence is admissible is "in rebuttal when a party 'opens the door' by introducing potentially misleading testimony.").

That, however, is not what the prosecution did here. Instead, trial counsel offered evidence of the characteristic profile of a family in which child sexual abuse had occurred or might occur, followed by a point-by-point comparison of how appellant's family picture reflected the key elements of that profile. The implicit syllogism was as follows:

Major premise: Families that have experienced child sexual abuse typically reflect certain characteristics.

Minor premise: Appellant's family reflects these same characteristics.

Conclusion: Appellant's family has experienced child sexual abuse.

The flaw in such a contention is apparent: Just because families in which abuse has occurred reflect certain characteristics does not mean that all families that reflect those characteristics have experienced abuse. For the foregoing syllogism to be valid, the major premise must be: *Only* families that have experienced child sexual abuse typically reflect certain enumerated characteristics. Dr. Revis did not so testify.

Indeed, even trial counsel acknowledged this flaw when she argued in closing: "Now, of course, Dr. Revis isn't telling you that because of [sic] these factors that are common to an incestuous situation were present, some of the factors were present in this particular [case], that that means the abuse occurred or didn't occur. Obviously, the prosecution didn't present it in that light." Notwithstanding this disclaimer, earlier it was apparent that this is precisely what trial counsel sought to imply—witness her assertion to the military judge, regarding the relevance of Dr. Revis' testimony, that she intended to argue from it the inference that "this family was ripe for [child sexual abuse]."

I am unconvinced that *Banks* is distinguishable. Indeed, it seems to me to be entirely on point in every material way. There, citing Mil.R.Evid. 403, Manual for Courts–Martial, United States, 1984, the majority generally rejected admissibility of expert testimony that "offered a characteristic 'profile' to present appellant's family situation as ripe for 'child sexual abuse' [that, i]n effect, ... purported to present the characteristics of a family that included a child sexual abuser." *Banks*, 36 MJ at 161. Virtually identical prosecution evidence was put to virtually the same use here and, so, should have been excluded.

There seems to be some ambiguity, however, as to whether defense counsel made a timely and adequate objection. My reading of the relevant portion of the record, which is recited in the majority opinion, 45 MJ at 65–67, indicates that appellant had no objection to Dr. Revis testifying about the family profile and whether the characteristics of appellant's family fit the pattern of that profile. Rather, he objected only to "the specifics being gone into" in which Dr. Revis compared appellant's family to the profile point-by-point.

As I have indicated, I read *Banks* to render the unobjected-to testimony inadmissible. Once that objection was forfeited, however, *see* Mil.R.Evid. 103(a)(1), Manual, *supra* (1995 ed.), I do not believe that the rest of Dr. Revis' testimony was particularly prejudicial. Moreover, this was but a small part of Dr. Revis' testimony. A much more substantial, and significant, part of that testimony focused directly on the daughter and the reliability of the questioning techniques that resulted in uncovering the alleged incidents. Accordingly, on the record as a whole, I consider that this error was harmless. *See* Mil.R.Evid. 103(a).