RYAN, Judge
(dissenting):
Contrary to the majority’s conclusion, the military judge abandoned his role as a gatekeeper in the first instance. Nonetheless, I agree with Chief Judge Baker that there was no prejudice. I respectfully dissent.
A.
The framework for evaluating expert testimony is well established. “M.R.E. 702 dictates the admissibility of expert testimony.” United States v. Sanchez, 65 M.J. 145, 149 (C.A.A.F.2007). “Interpreting the analogous Fed.R.Evid. 702 in Daubert [v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)], the Supreme Court ... made clear that the trial court has a ‘gatekeeping1 role.” Id. (quoting Daubert, 509 U.S. at 589, 113 S.Ct. 2786). It is incumbent upon trial judges to “ ‘ensure that any and all scientific testimony ... is not only relevant, but reliable.’ ” Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting Daubert, 509 U.S. at 589, 113 S.Ct. 2786). No less is required when evaluating expert testimony that is not based,on science. This obligation is necessary because expert witnesses have “testimonial latitude unavailable to other witnesses on the ‘assumption that the expert’s opinion will have a reliable basis in the knowledge and experience of his discipline.’” Id. at 148, 119 S.Ct. 1167 (quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786). Thus, where expert “testimony’s factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has ‘a reliable basis in the knowledge and experience of [the relevant] discipline.’ ” Id. at 149, 119 S.Ct. 1167 (second alteration in original) (quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786).
Although a military judge “must have considerable leeway” to decide how to test an expert’s reliability and whether an expert’s testimony is sufficiently reliable, id. at 152, 119 S.Ct. 1167, a military judge does not have the “discretion to abandon the gate-keeping function.” Id. at 158-59, 119 S.Ct. 1167 (Scalia, J., concurring). When a military judge properly exercises his role as a gatekeeper, we review the military judge’s rulings regarding the admission of expert testimony for an abuse of discretion. United States v. Griffin, 50 M.J. 278, 284 (C.A.A.F.1999); see also Kumho, 526 U.S. at 154, 119 S.Ct. 1167. Nevertheless, it is necessary to “review de novo the question whether the military judge properly followed the Daubert framework” in performing its role as a gatekeeper. Griffin, 50 M.J. at 284; see also United States v. Roach, 582 F.3d 1192, 1206 (10th Cir.2009) (“‘[W]e review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance. We then review the trial court’s actual application of the standard in deciding whether to admit or exclude an expert’s testimony for an abuse of discretion.’ ”) (alteration in original) (emphasis added) (citation omitted).[1]
B.
The problem in this case is that the military judge made no attempt to apply the framework of Daubert, Kumho, United States v. Houser, 36 M.J. 392, 397 (C.M.A.1993), M.R.E. 702, or any other authority addressing expert testimony. The military judge identified no guiding principles, provided no factual findings or legal analysis on the record, and cited no relevant law to support his decision to allow Ms. Falk to testify. While it is certainly true that the military judge “need not ‘recite the Daubert standard as though it were some magical incantation,”’ where, as here, a party objects to potential expert testimony, the military judge “must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.” Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 *324 (10th Cir.2000) (citation omitted). Without this type of record development, “it is impossible on appeal to determine whether the [military judge] carefully and meticulously review[ed] the proffered [expert] evidence or simply made an off-the-cuff decision to admit the expert testimony.” Id. (second alteration in original) (citation omitted) (internal quotation marks omitted).
The only on-the-record discussion of Ms. Falk’s expertise did not focus on Ms. Falk’s qualifications and reliability; rather, it focused on the conclusions the military judge expected Ms. Falk to reach based on the testimony of other experts in other cases. For example, the military judge observed:
Defense, based on my experience all these experts will say some [victims] scream, some don’t, some delay reporting, some report immediately, and I would think that the government’s expert would admit all that on cross-examination_ [W]here I have seen this, is that the government more usually feels compelled to present that evidence so when they stand up and argue to the panel that’s not unusual for someone not to scream.... They feel compelled to present that evidence so that they don’t get the objection from the defense saying, hey, those are facts not in evidence.
This approach is plainly contrary to the Dau-bert framework, which requires the focus “be solely on principles and methodology, not on the conclusions that they generate.” See 509 U.S. at 594-95, 113 S.Ct. 2786. Moreover, under the Daubert framework, the military judge’s actual task is “to decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.” Kumho, 526 U.S. at 156, 119 S.Ct. 1167 (emphasis added) (citations omitted) (internal quotation marks omitted). Had he done so, it should have been plain, for the reasons identified by the majority, see, e.g., United States v. Flesher, 73 M.J. 303, 314 (C.A.A.F. 2014), that Ms. Falk would not provide the kind of counterin-tuitive behavior testimony we have endorsed in other cases, see, e.g., United States v. Pagel, 45 M.J. 64, 68 (C.A.A.F.1996), but instead only inherently biased, hearsay-based testimony on an area of expertise defined only by the witness’s job title; i.e., “sexual assault response coordinator.”[2] For, in essence, the sole basis for Ms. Falk’s testimony was that she had encountered thousands of putative victims — and believed them.
The majority acknowledges these and other shortcomings in the military judge’s review of Ms. Falk’s reliability, see Flesher, 73 M.J. at 312, 314, 315-16, 317 (emphasizing the military judge’s failure to create a record or inquire into the Houser factors), yet inexplicably concludes that “the military judge did perform an adequate, if not exemplary, preliminary gatekeeping inquiry.” Id. at 313. Without any indication in the record that the military judge properly applied the relevant law, I simply cannot agree. The standards for gatekeeping and admissibility are low,[3] but they are not nonexistent — a military judge engaging in no inquiry under the applicable law, even though asked to, and *325 relying entirely on past experts who testified in other eases, is not enough. Accordingly, I would find that the military judge erred by abdicating his gatekeeping duty to evaluate the reliability of Ms. Falk’s purportedly “expert” testimony. Nevertheless, for all the reasons stated by Chief Judge Baker, I agree that there was no prejudice in this case.
I respectfully dissent.

. Several circuit courts apply a similar approach. See, e.g., Manpower, Inc. v. Ins. Co. of Pa., 732 F.3d 796, 805 (7th Cir.2013); Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir.2013); Elcock v. Kmart Corp., 233 F.3d 734, 745 (3d Cir.2000); Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir.2000).

. To be sure, a sexual assault response coordinator is a proper and useful role, but this job title neither defines an area of recognized expertise nor alone qualifies Ms. Falk as an expert. Ms. Falk’s limited voir dire established little beyond the fact that she is likely too closely tied to those for whom she advocates to be either neutral or detached, let alone either scientific or helpful as contemplated by M.R.E. 702. I do not disagree with either the majority, Flesher, 73 M.J. at 313, or Chief Judge Baker, id. at 320, 322 (Baker, C.J., dissenting), that expert testimony on coun-terintuitive behaviors of sexual assault victims may, in certain cases, be relevant and helpful to the trier of fact. See Houser, 36 M.J. at 398. It is paramount, however, that the military judge provide some indication on the record that he applied the appropriate legal framework in carrying out an individualized review of the particular "expert” witness’s reliability, and area of expertise.

. ' The military judge’s abdication of his gatekeep-ing role by failing to apply the appropriate legal standard also implicates an abuse of discretion in admitting Ms. Falk’s testimony. See United States v. Avitia-Guillen, 680 F.3d 1253, 1257 n. 3 (10th Cir.2012) ("When a district court neglects its gatekeeping function, it commits two errors. First, it commits error, reviewable de novo, by not making a reliability determination. Second, it abuses its discretion when it admits the expert testimony without a reliability determination.”).