UNITED STATES

v.

**Technical Sergeant Richard E. STROH,
FR538–68–7942 United States Air
Force.**

**ACM 32182.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 4 Jan. 1996.

Decided 23 April 1997.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Colonel David W. Madsen, Major Gerald R. Bruce, Captain Earl F. Martin, and Captain Todi S. Carnes.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Libby A. Brown.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Senior Judge.

Convicted of sexually molesting, raping, and threatening H, a young playmate of his daughter, and indecently exposing his penis to her and other neighborhood children, appellant argues he was prejudiced by (1) improper bolstering of the victim's credibility, (2) restriction on his right to present a defense, (3) flawed impeachment of his testimony, (4) egregious prosecution argument, and (5) an incompetent defense lawyer. We affirm appellant's conviction and sentence to a dishonorable discharge, 25 years confinement, and reduction to E–1.

## FACTS

In the fall of 1992, Mrs. N noticed a dramatic change in her daughter H's behavior as she entered second grade. "She was restless in her sleep. She started having nightmares. She was unhappy all the time and cried a lot.

She was always whining." Mrs. N attributed H's problems to a new baby in the family and the death of two grandparents. However, H's behavior "really. got bad in 1994" when Mrs. N caught her masturbating. According to Mrs. N, H began masturbating "all the time," wet the bed, had trouble academically, and was antisocial.

With H's behavior deteriorating, Mrs. N took her to a local mental health clinic for therapy in mid-September 1994. Around Thanksgiving of that year, H began to reveal that appellant had touched her inappropriately about 2 years before when she played at his house.

Ultimately, H revealed a sordid story of sexual abuse at appellant's hands, and testified about it at trial. She described playing "peek-a-boo" and "hide-and-go-seek" with appellant and other neighborhood children at his house. If they found appellant during a game of "hide-and-go-seek," they had "to give him a hug." For "peek-a-boo," "he would flash open his bathrobe and say 'peek-a-boo, I see you.'" Since appellant never wore any clothing under his bathrobe, H and the other children would see his penis "a lot."

While watching TV one day at appellant's house "around the end of the first grade and the beginning of the second grade" (1992), appellant told H to stand up and take off her pants and panties. She complied and appellant handcuffed and tied her to a chair. After taping her mouth shut, he fondled and probed her vagina with his fingers. When appellant's wife came home, appellant took H upstairs to the bedroom, tied her to the bed, and had sexual intercourse with her. He threatened to kill her if she told anyone. According to H, appellant's wife and daughter were not aware of incident, and she went to the daughter's bedroom afterward to play. She continued to visit the house to see appellant's daughter until the end of 1992 or beginning of 1993.

Dr. Cooper, a well-qualified pediatrician with extensive experience in diagnosing and treating child sexual abuse, examined H in December 1994. She found H had a "clearly and unmitigatingly abnormal" hymenal tissue "very characteristic of a tearing injury which may be associated with a penetrating injury."

This penetrating injury was consistent with penile or attempted penile penetration, and would not have resulted from masturbation or some straddling type trauma like riding a bike.

Dr. Cooper also observed that H exhibited common behaviors associated with sexually abused children of the 6 to 11 age group, such as delayed reporting, recurrent nightmares, bed-wetting, low self-esteem, poor school performance, antisocial behavior, and excessive masturbation. Dr. Cooper opined that like most child victims, H had been consistent in certain "core elements" of her report, that is, facts she did not change. According to Dr. Cooper, H was consistent that there was only one "perpetrator" at one place who had exposed himself, used a "bondage modus operandi," and threatened to kill her.

Finally, H was also not alone in her description of appellant's fondness for playing children's games while clad only in a bathrobe. Ten-year-old Jake, another neighborhood playmate, testified that he often played with appellant's son. Appellant would join in games of "hide-and-go-seek," exposing his penis when the robe would "fly back." Jake believed he saw appellant's penis "everytime [he] went there."

## BOLSTERING OF VICTIM'S CREDIBILITY

### Expert Witness

■ Appellant argues, as he did at trial, that Dr. Cooper became a human lie detector in his case, stating "in no uncertain terms that [H] had been sexually abused consistent with her allegations" and offered inadmissible prior consistent statement evidence. We disagree. First off, we review a military judge's decision to admit expert testimony under an abuse of discretion standard. *United States v. Raya*, 45 M.J. 251, 252 (1996). This trial judge was keenly alert to the line in the sand appellate courts have drawn on the admissibility of expert testimony comparing a victim's behavior to that of an identified class of abuse victims. *See United States v. Cacy*, 43 M.J. 214 (1995). Not once, but twice, he *sua sponte* instructed

the members that they had the responsibility to determine a witness's credibility and that

> [n]o expert witness nor any other witness can testify that the alleged victim's account of what occurred is true or credible, that the expert believed the alleged victim, or that a sexual encounter occurred. To the extent that you believe that any witness testified or implied that she believed the alleged victim, that a crime occurred, or that the alleged victim is credible, you may not consider this as evidence, that a crime occurred or that the alleged victim is credible.

The military judge's ruling admitting Dr. Cooper's testimony, as well as his limiting instruction, hit the bull's-eye. Dr. Cooper never specifically testified that she believed H was truthful or that appellant committed the offenses charged. Instead, she stayed within the bounds the Court of Appeals for the Armed Forces established for experts in child sexual abuse cases. "An expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the child-witness has exhibited these symptoms; discuss patterns of consistency in the stories of victims and compare those patterns with patterns in the victim's story; and testify about a child's ability to separate truth from fantasy." *Cacy*, 43 M.J. at 217 (citations omitted). The judge kept Dr. Cooper's testimony within these limits, even directing Dr. Cooper to refer to "alleged perpetrator" instead of "perpetrator." Moreover, his instruction required the members to keep the expert's testimony in its proper context.

### Mrs. N

H's mother, Mrs. N, testified on direct examination as a prosecution witness about H's nightmares. On cross-examination, defense counsel tried to explore whether someone else, such as appellant's son Jonathan, was responsible for the offenses, asking Mrs. H if she recalled telling investigators that H would scream out in her sleep, "stop get off me, it hurts Jonathan." The judge sustained the prosecutor's objection to the question, ruling it beyond the scope of direct, but allowed defense counsel to recall Mrs. N in the defense case-in-chief to explore that issue.

■ As a defense witness, Mrs. N modified her testimony somewhat, stating H would scream "stop, it hurts, get off me" and then say the name of either appellant's daughter or son. On cross, the prosecutor explored the defense attempt to shift blame to Jonathan, asking Mrs. N if H ever said anyone other than appellant had abused her. Defense counsel failed to object to the question or the reply, which was no. Now, appellant argues Mrs. N improperly bolstered H's testimony with inadmissible prior consistent statements of the identity of her abuser. *See* MIL.R.EVID. 801(d)(1)(B). We disagree.

The prosecutor did not question Mrs. N to elicit a prior consistent statement under Military Rule of Evidence 801(d)(1)(B), rather, he wanted to part the bushes to show defense counsel's rabbit trail wouldn't lead the members anywhere. Defense counsel may not plant a weed in the government's evidence garden and then prevent the prosecutor from trying to pull it out. *See Raya*, 45 M.J. at 254. In any event, appellant forfeited the prior consistent statement issue by failing to object at trial, and we do not find plain error which would excuse the forfeiture. MIL.R.EVID. 103; *United States v. Taylor*, 44 M.J. 475, 480 (1996); *cf. United States v. Pagel*, 40 M.J. 771 (A.F.C.M.R.1994) (admission of profile evidence from prosecution expert witness was not plain error), *aff'd*, 45 M.J. 64 (1996).

### RIGHT TO PRESENT A DEFENSE

■ An accused has a constitutional right to present legally and logically relevant evidence at trial that someone else had the motive, knowledge, and opportunity to commit the offense charged. Furthermore, the identity of the perpetrator is an element of proof that the accused has a fundamental constitutional right to rebut. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Woolheater*, 40 M.J. 170 (C.M.A.1994); *cf. United States v. Buenaventura*, 45 M.J. 72 (1996) (admission of "rape shield" evidence to show that another committed the offenses).

Appellant claims he was denied the right to present a defense that his son Jonathan may have committed the offenses. We conclude appellant's argument is grounded in wishful thinking rather than fact.

As outlined above, defense counsel explored H's nightmare statements about Jonathan. Also in response to defense cross-examination, Mrs. N testified that Jonathan's "behavior in the neighborhood" was "not quite right" at times. Moreover, appellant, who testified on the merits, pointed out that his son had learning disabilities. The only question the judge prohibited in this area was whether Jonathan had received "any treatment relative to his disabilities." The judge sustained the prosecutor's relevance objection and defense counsel did not ask for argument or otherwise question the ruling, but immediately moved on to another area.

To preserve a ruling excluding evidence, defense counsel must make an offer of proof of the "substance of the evidence" unless it is "apparent from the context within which questions were asked." MIL.R.EVID. 103(a)(2); *United States v. Dorsey*, 16 M.J. 1 (C.M.A.1983) (four-part test to determine admissibility of constitutionally required evidence). When the evidence concerns an individual's mental or behavioral problems, the offer should clearly identify the significance of the testimony and theory of admissibility as expert testimony is often required to link such evidence to the issues in the case. *See United States v. Sanchez*, 40 M.J. 782 (A.F.C.M.R.1994), *aff'd*, 44 M.J. 174 (1996).

Here, we fail to see how a learning disability or its treatment, in and of itself, is relevant to proving whether appellant, or his son, committed the offenses charged. It did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MIL.R.EVID. 401. Therefore, defense counsel needed to make an offer of proof to preserve the issue, and probably needed expert testimony to show relevance.

In any event, appellant planted the seed that his son committed the offense against H through Mrs. N's testimony, and his counsel unsuccessfully presented that theory to the members in closing argument. Granted, the military judge sustained an objection to defense counsel's argument when he quoted Mrs. N as testifying H screamed, "get off me, stop, stop, get off of me Jonathan." However, the judge was right on the mark since counsel misstated Mrs. N's testimony that H would scream "stop, it hurts get off me" and say the name of either appellant's son or daughter. Counsel who wants to attribute a direct quote to a witness in closing argument had better get it right.

## IMPEACHMENT OF APPELLANT

### *Background*

Appellant testified in his own behalf. On direct examination, he admitted wearing only a bathrobe while playing with his children's playmates. He explained the robe came open only once and he retied it immediately. Besides just denying that he committed the offenses charged, he offered that "it is not my character" to sexually abuse a child, he had never been "in any type of trouble," and he had never had "any complaints" about him "concerning improper conduct with respect to children."

On cross-examination, the prosecutor leapt on appellant's broad denials like a pit bull. The prosecutor grilled appellant on whether he was aware that his daughter had complained to investigators about appellant fondling her vagina, and whether he told investigators that he had "different ideas about sexuality," had visited nude beaches, gone "skinny dipping," and "streaked" while in Germany. Appellant denied telling investigators about any of those subjects or being aware of his daughter's complaint.

In rebuttal, the prosecutor called Agent Barnes, the investigator who interviewed appellant, to "impeach" appellant's testimony. Over defense objection, Agent Barnes painted a picture totally opposite appellant's version of the interview. Agent Barnes recalled advising appellant that he was suspected of abusing his daughter as well as H. When he confronted appellant about wearing only a bathrobe while playing with neighbor children, appellant replied, "he was more sexual-

ly open than the average person." Appellant then went on to describe to Agent Barnes how he visited a nude beach and was investigated by the security police for skinny dipping.

The military judge advised the members that "[e]vidence as to what allegations the [investigators] told the accused they were investigating, and evidence that the accused swam nude in Germany or attended nude beaches, may be considered by [them] for the limited purpose of its tendency, if any, to rebut the testimony of the accused." The judge cautioned them that they could not use the evidence "for any other purpose," such as concluding that appellant was a bad person, had criminal tendencies, or committed the charged offenses.

### Discussion

■ The Military Rules of Evidence recognize that the accused who elects to testify is subject to impeachment just like any other witness. MIL.R.EVID. 404(a)(3), 607, 608, 609; *United States v. Pruitt*, 43 M.J. 864, 868–869 (A.F.Ct.Crim.App.1996). The prosecutor may directly attack the testifying accused's character for truthfulness with opinion or reputation evidence, or cross-examine the accused about specific instances of conduct probative of truthfulness. However, other than conviction of a crime, the prosecutor is bound by an accused's denial in response to the prosecutor's question of a specific instance of conduct, and may not prove the denied conduct by extrinsic evidence unless the conduct shows bias, prejudice or a motive to misrepresent. MIL.R.EVID. 608; *Pruitt*.

■ On the other hand, case law recognizes that the prosecutor may impeach, by contradiction, the testifying accused who denies committing certain misconduct on direct examination, such as "I have never done _____." Also, the prosecutor may use contradiction to impeach an accused who volunteers a broad denial when confronted with a narrow cross-examination question. When impeaching by contradiction, the prosecutor may prove the denied conduct by extrinsic evidence. *United States v. Trimper*, 28 M.J. 460, 466–67 (C.M.A.1989), *cert. denied*, 493

U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374; *Pruitt*, 43 M.J. at 869.

■ Here, appellant opened the door to the areas in question through his broad denials in direct examination which included comments concerning his character, previous "troublefree" life, and lack of knowledge of children's complaints. He can't complain on appeal because the prosecutor marched through it. By his cautionary instruction, the military judge placed this evidence in its proper context as impeachment evidence, the theory offered by the prosecutor. Granted, the military judge didn't instruct on the "streaking" aspect of the problem; however, extrinsic evidence was not offered on that issue and defense counsel waived a more expanded instruction by failing to request one. *See Trimper*, 28 M.J. at 468.

### REMAINING ISSUES

■ For the first time, appellant complains that the prosecutor inflamed the member's passions and misstated both the law and the evidence. The short answer here is appellant forfeited the issue at trial by failing to object and we do not find plain error to excuse the forfeiture. R.C.M. 919(c); *United States v. Ruppel*, 45 M.J. 578 (A.F.Ct.Crim.App.1997) and cases cited therein.

■ Finally, appellant claims he was represented by an inept civilian and military defense team. We disagree. As we stated in *United States v. Simoy*, "Today, a convicted military defendant rarely passes on an opportunity to lay the blame for his predicament at his lawyer's doorstep—this case is no different." 46 M.J. 592 (A.F.Ct.Crim.App.1996). Trial lawyers are neither magicians nor alchemists—a bad case is a bad case. Here, appellant's trial team did the best with what appellant gave them: an adult male who admitted to investigators that he routinely played games with neighborhood children clad only in his bathrobe, exposing his penis at least once. Furthermore, counsel can hardly be blamed for appellant's attempt to lie his way out of pretrial statements that he made to investigators which sent his case spiraling into an unrecoverable tailspin. In summary, we find appellant was

represented effectively by counsel and was not deprived of a fair trial. *See Simoy* and cases cited therein.

### CONCLUSION

The findings and sentence are correct in law and fact, and no error prejudicial to appellant's substantial rights occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judges MORGAN, C.H., II, and MORGAN, J.H. concur.